Birchard, J.
The object of this bill is to reach an equity in certain land sold on an execution in favor of Gaylord, and purchased by Chamberlain, who has the legal title. Much testimony has been taken, numerous points of law raised, and great pains taken in preparing the very elaborate arguments upon several questions of fact, and of conflicting evidence as well as of law.
So far as we deem it important to a correct understanding of our views of the merits, these matters of fact and mooted points will be noticed in this opinion. And, for the sake of brevity, those only will be noticed which we consider important, as being those upon which the merits of the controversy depend.
*293 The land in dispute was conveyed by deed to John Brown, on October 23, 1838.
Gaylord’s judgment was a lien upon all of Brown’s land, from May 27, 1839, the first day of the term of the court of commoD pleas, at which it was rendered.
On June 17, 1839, Brown mortgaged all his lands, including this now in controversy, to the respondents, Wells and Wads-worth, to secure a large sum of money.
August 29, 1839, two days before the rendition of judgment in favor of Gaylord against Brown, in the Supreme Court, Brown assigned all his property, real and personal, to De Peysten, in order to prevent a levy by Gaylord.
On September 17, 1837, the Western Reserve Bank obtained the judgment set forth in the bill against Brown and his sureties, which was paid on execution, by complainant.
^October 12, 1840, the land in dispute was sold on the execution in favor of Gaylord, and bid in by Chamberlain at $1,681, and the execution was returned satisfied at the November term, 1840, of the Portage common pleas.
After the return of the writ, and between that time and the execution of the sheriff’s deed, Chamberlain had notice that the complainant claimed to hold an interest in the land by virtue of the title bond set forth in the bill. Whether he had such notice before the confirmation of the sale, or at what precise time, is a question of some doubt/
It is equally doubtful whether this title bond had not been surrendered by the complainant at the time Brown received his deed for the land. Indeed, it is difficult to reconcile the statements and conduct of Oviatt, as disclosed by the evidence, with the supposi- ■ tion that he held this bond from the date of the receipt attached to De Peysten’s deposition. But, admitting that he so held it, and „ admitting that Chamberlain had notice between the return of the writ and the subsequent term of the court at which the sale was confirmed, and a de.ed ordered by the court, in our view the complainant is not entitled to the decree which he seeks.
The rights and the acts of Gaylord and Chamberlain, and the situation of Oviatt’s equi ty, must all be taken into consideration, when coming to a conclusion as to the merits of their claim in chancery.
*294 Oviatt’s rights to this equity could not have availed him anything in opposition to the mortgage to Wadsworth and Wells, who were bona fide purchasers without notice. That mortgage covered two other tracts of land ample to satisfy the judgment of Gaylord, which was a lien prior to the mortgage; and, had the sale been set aside at the time it was confirmed, the consequence must have been a levy of an alias writ by Gaylord upon the other land covered by the mortgage, and the operation would have produced a sale of this land upon the.decree, instead of the execution. Had that course been adopted, complainant would have been left precisely where he is now, ^without any benefit from his secret bond. The proceeds of all the lands, without any such bills of costs as this useless operation would have, caused, are found insufficient to satisfy the mortgage and the judgment.
What was done, has produced the precise result that ought to have been produced. It is what a court of equity would have done, if all the parties were before it asking a distribution of the proceeds of the lands bound by the judgment of Gaylord, and embraced in the mortgage. The claim would have been marshaled so as to satisfy Gaylord’s judgment first, and then the mortgage to the extent of the value of the remaining lands.
Another view of the case is equally decisive. The title of Chamb.erlain was acquired at a sheriff’s sale, which, by statute, vests in him the title from the day of the sale. The deed executed at a subsequent date, has relation back to that date, and is as effectual as if then made.
It is not pretended that the purchaser, at that time (or if pretended, it is a mere pretense), had any notice of complainant’s equity. He made, then, his purchase in good faith, without notice, satisfied the judgment without notice, and has title by operation of law anterior to the notice. So that if the equity of Oviatt were ever so fully established, it would fail, because that of Chamberlain is equal to his, and is coupled with the legal title, untainted by fraud. There is an essential diffei’ence between a sheriff’s sale and a private sale, in this:
The purchaser at the former purchases at his peril; and the purchase money goes to the creditor — not to the owner of the land; and, if the title fail, he loses the consideration. He has no recourse. The purchaser at private sale may arrest the proceeding *295 at any stage if cause exists, and look to his vendor for redress If liis title fails, he may sue and recover back the consideratioi paid.
Bill dismissed,
Judge Hitchcock was formerly counsel, and therefore took no part in deciding the cause.