CAROLINE F. CLARK v. MICHAEL REESE.

35   89
79   675

ERROR—COMPELLING WITNESS TO ANSWER QUESTIONS.—A party to an action can-
not avail himself of the alleged error of the Court in compelling his witness to
answer a pertinent question proposed by the opposite party, where the witness
had refused to answer on the ground that his reply would disgrace and degrade
him.   The privilege not to answer being personal to the witness, it is not in any
sense the privilege of the party calling him.   But as to a party demanding an
answer, the rule is otherwise if the Court allows the privilege in a case where
the witness fails to bring himself within the rule.

IDEM.—In such a case, where the matter to which the question related was one of
the facts in issue, the fact that the witness' reply would disgrace or degrade
him does not shield him from answering the question.

RULE OF EXAMINATION OF A PARTY AS A WITNESS.—Where, in a civil action, a
party becomes a witness in his own behalf, he thereby subjects himself to all the
rules regulating the direct and cross examination of witnesses.

IDEM—PENALTY FOR REFUSING TO ANSWER.—On the trial of an action for a breach
of promise of marriage, the character of plaintiff for chastity, as well as the fact
of the promise alleged, being among the issues tried, the defendant—who testified
as a witness in his own behalf—to plaintiff's question on cross examination, if he
had ever called plaintiff his "dear Carrie," or his "dear child," replied, "I
decline to answer the questions; when a man takes personal liberties with a
woman he should not come on the stand and swear to it."   Plaintiff then asked
him the further question, "Did you ever take improper liberties with plaintiff?"
to which, on defendant's declining to answer, the Court enforced an answer, under
penalty of committing defendant for contempt, also, of striking out his answer
and allowing plaintiff to take judgment as prayed in her complaint: Held, first,
that defendant's response to the first question clearly implied that he had taken
personal liberties with plaintiff; second, that plaintiff's last question was proper,
and she was entitled to demand an explicit answer; and third, that under section
four hundred and nine of the Practice Act, the Court did not err in the mode of
enforcing such answer.

APPEAL from the District Court, Fifteenth Judicial Dis-
trict, City and County of San Francisco.

This was an action for a breach of promise of marriage,
with damages laid at one hundred thousand dollars.   The
defendant's answer consisted of a denial of the alleged prom-
ise, and a general charge of unchaste and immodest behavior
on the part of plaintiff, and of specific charges of cohabitation
by her with divers persons named, and among them witness
B. B. Lincoln; of all which defendant alleged his ignorance
until after the time of the alleged promise.   Said special

matters were pleaded in bar of the action and in mitigation of damages.

On the trial B. B. Lincoln was examined as a witness for defendant, and on being asked the question by defendant's counsel if he ever at any time did have improper intimacy with the plaintiff, answered, "those are questions I decline to answer." The examination in chief then closing, plaintiff's counsel asked him the same and the further question if at any time he had told defendant that he had had an improper intimacy with plaintiff; both of which questions the witness declined to answer, on the ground that his answers thereto would degrade and disgrace him. The Court ruled that he must answer or be committed for contempt; whereupon he answered both questions in the affirmative. The defendant duly excepted to said decision of the Court.

At the trial defendant was examined as a witness in his own behalf.

The instructions given to the jury by the Court were as follows:

"Marriage is considered in law as a civil contract, to which the consent of the parties is essential; and, like every other contract, all that is necessary to its validity is the deliberate consent of competent parties to enter into a present agreement to take each other for husband and wife.

"In the case now under consideration, it is conceded that there was no legal impediment to their entering into the solemn agreement alleged to have been made between them; therefore, it is not necessary to instruct you as to our statutory prohibitions concerning marriage.

"If a man, being at the age of twenty-one years, deliberately promises to marry a woman who has attained the age of eighteen years, and she reciprocates the promise, there being no legal prohibition, and he afterwards refuses to ratify the agreement thereby made, he is liable to her for damages for the breach of the contract, unless he shows good legal cause why he should be exonerated from the fulfilment of

his promise.   An agreement to marry made by parol is as obligatory upon the parties as if entered into by a deed in writing.   Where a man enters into a contract of marriage with a woman, the law, notwithstanding such contract, will, under some circumstances, absolve him from its performance, and from damages occasioned by his refusal to consummate the contracted alliance: as where the character of the woman for chastity was bad at the time of the contract, her character being unknown to him at the time; or if she had prostituted her person to any one before such contract, and the fact was unknown to him; or if after such contract she prostituted her person to any one, other than him; or that she was at any time—even after all intimacy between them had been broken off—guilty of indecent and lascivious familiarities with another.   Marriage is contracted for the mutual comfort and happiness of the contracting parties, and can be avoided if the woman had, prior to the contract, been guilty of unchaste conduct which was unknown to the man at the time he entered into the same; or if she be guilty of such conduct with another man after such contract is made. But, if a party is cognizant of the unchaste character of the woman before he makes the contract, it is no exoneration to him, and the law authorizes the finding of damages for its breach.

"The first question that will arise in your deliberations will be: Did the plaintiff and defendant enter into a contract to marry?   This fact can be shown not only by the declarations of the defendant, but you may infer it from the conduct of the parties—their intimacy, the giving of and receiving presents—any affection entertained by plaintiff for the defendant; if she valued the affection and society of the defendant, as well as all the circumstances of their intercourse which have been adduced in evidence, if you should be of the opinion the circumstances warrant such inference.

"The plaintiff having testified to the promise of marriage, and the defendant having in his evidence denied making it, if there is no other evidence, direct or indirect, upon that

point, and you cannot decide between their opposing oaths, your verdict must be for the defendant. Or if, after considering all the evidence as to the alleged promise of marriage, that subject is left in doubt, and you are unable to decide where the truth lies, you will find for the defendant.

"If you find there was no such mutual promise, your verdict will be for the defendant; or if you find there was such a mutual promise, and the plaintiff had been guilty of improper intercourse with another man prior thereto, and the defendant was not aware of the fact, or if she had been guilty of such conduct subsequent to such promise, then your verdict will be for the defendant. But if you find that a contract of marriage was entered into between the parties; that the defendant was guilty of a breach of such contract, and has not been released or exonerated from its fulfilment, your verdict should be for the plaintiff.

"You alone, gentlemen of the jury, are the judges of the facts of the case, as well of the credibility of the witnesses who have testified.

"The burden of proof is always upon the party who asserts the existence of any fact which infers legal responsibility; and you should not give weight to circumstances, however much they may excite conjecture or suspicion, which do not warrant belief.

"If you come to the conclusion the plaintiff is entitled to recover, you will then consider what damages should be awarded to her. It has been found impossible in actions for breach of promise of marriage to fix by any precise rule the amount, of compensation which should be awarded to the injured party; hence, that question is left to the sound discretion of the jury in each particular case. The action for breach of promise of marriage is intended to indemnify the injured party for the loss she sustains, including injury to her feelings, affections, and wounded pride, as well as the loss of marriage. It is also your province to take into consideration, on the question of damages, the pecuniary condition of the plaintiff. You can also consider, in mitigation

of damages, any improper or indelicate conduct, whether criminal or not, you may find she has been guilty of, and her character as to sobriety or virtue, either before or after the alleged promise.  On the other hand, you have a right to consider, in aggravation or enhancement of damages, whether or not the defendant has wantonly come into Court and attempted to show the plaintiff guilty of improper conduct with other men, of which she is innocent; the law pronounces such conduct to be adding insult to injury, and therefore proper to be considered by a jury in aggravation of damages.

"In considering the question of improper intercourse, you will endeavor to exercise a sound and sober judgment in weighing all the facts and circumstances as detailed, and determine whether they were such as would lead the guarded discretion of reasonable and just men to a conclusion.  You will not be influenced by any feelings of dislike or friendship you may entertain for or against either party, whether engendered by religious or political sentiments, or otherwise—nor by any apparent expression of opinion as to the facts made by the Court.

"In determining the credibility of witnesses, you can take into consideration their interest in the controversy; their appearance and deportment on the witness stand; the probability of the truth of their statements, when compared with the other evidence adduced; their friendly or hostile feelings towards the party they are testifying for or against; how far they are contradicted; whether or not they have been employed for a consideration to testify falsely, and how far they contradict themselves, as well as their means of knowledge. The impossibility of framing rules to be adapted to every case, by which to test the truthfulness of statements made by witnesses, the law authorizes jurors to examine and appreciate their credibility according to their best knowledge and observation of the laws governing human action."

The Court declined to give said instructions requested by

defendant, on the ground that they were substantially given in the charge of the Court. The defendant duly excepted. The plaintiff had verdict and judgment for five thousand dollars, and defendant appealed.

*Hall McAllister*, for Appellant.

The Court erred in compelling witness Lincoln to answer plaintiff's question touching improper intimacies, etc. A witness is not only protected against compulsory disclosures, which would lead to his conviction for crime—as, for example, where adultery or fornication is a statutory offense—but that he is not bound to give testimony by which he would be degraded or disgraced. (*Southard* v. *Rexford*, 6 Cowen, 259; *The People* v. *Mather*, 4 Wend. 250–254; 2 Phillips on Evidence, C. H. & E. Notes, p. 939 and note 592, p. 940, note 532; *Vaughn* v. *Perine*, 2 Pennington, N. J., 729–734.)

The Court erred in compelling the defendant, Michael Reese, a witness in his own behalf, on cross examination by counsel for plaintiff, in the face of his protestation that the disclosure would degrade and disgrace him, and under the penalty in case of refusal of having his answer stricken out and judgment for one hundred thousand dollars entered against him, to testify to criminal intercourse with Mrs. Clark. (*Vide* authorities above cited; also, Prac. Act, Bancroft's, Sec. 420; Voorhies' N. Y. Code, Ed. 1864, Sec. 394, p. 750, and cases cited.)

The Court erred in refusing to give the following instruction to the jury: "If the evidence shows a single act of unchastity, even at a distance of many years, and that fact was unknown to the defendant at the time of the alleged promise, if such promise be proven, then that single fact is sufficient to establish that plaintiff is an unchaste woman." (*Hall* v. *Wright*, 1 Ellis, Black & Ellis, 96 E. C. L. 750, 754; *Beechey* v. *Brown*, 1 Ellis, Black & Ellis, 96 E. C. L. 802; *Johnson* v. *Caulkins*, 1 Johns. 117, 118; *Willard* v. *Stone*, 7 Cowen, 23, 24; Sedgwick on the Measure of Damages, last

edition, 369; *Irving* v. *Greenwood,* 1 Car. & Payne, 350; 11 E.
C. L. 412; *Boynton* v. *Kellogg,* 3 Mass. 189; N. Y. Civil Code,
Sec. 44, p. 16; *Berry* v. *Bokeman,* 44 Maine, 166; *Bench* v.
*Merrick,* 47 E. C. L. 462; Mayne on Damages, top p. 225,
marginal p. 283.)

The Court erred in refusing to give to the jury the follow-
ing instruction: "It is a fundamental rule that it is not
necessary to prove the direct fact of adultery or fornication,
because it seldom occurs that such proof is attainable; gen-
erally such facts may be inferred from circumstances that
lead to it by fair inference, or a necessary conclusion." (Shel-
ford on Marriage and Divorce, 403; 33 Law Library, 220,
221; 2 Bishop on Marriage and Divorce, last edition, pp.
613, n. 3, 614, n., 617, 626, 628, 629, 636; *Loveden* v. *Loveden,*
2 Hagg. Consist. R. 1; 4 Eng. Ecc. R. 461, 462; *Van Epps*
v. *Van Epps,* 6 Barb. 321, 322.)

*Alexander Campbell,* and *J. L. Love,* for Respondent.


By the Court, RHODES, J.:

The defendant cannot avail himself of the alleged error of
the Court in compelling the witness Lincoln to answer the
question propounded to him by the plaintiff's counsel after
his refusal to answer, on the ground that his reply would
degrade and disgrace him.   The privilege of refusing to an-
swer is personal to the witness, and is not in any sense the priv-
ilege of the party calling him.   Mr. Chief Justice Nelson, in
*Cloyes* v. *Thayer,* 3 Hill, 564, says: "If ordered to testify
in a case where he is privileged, it is a matter exclusively
between the Court and the witness.   The latter may stand
out and be committed for contempt, or he may submit; but
the party has no right to interfere or complain of the error.
It would be otherwise if the Court allowed the privilege in
a case where the witness had not brought himself within the
rule, as the party would then be improperly deprived of his

testimony." (See, also, *Ward* v. *People*, 6 Hill, 144; 2 Phil. on Ev., C. H. & E. Notes, 935.)

The action of the Court is sustainable on another ground. The matter to which the question of the plaintiff's counsel related was alleged in the defendant's answer, and was thus a fact in issue. It is provided by section four hundred and eight of the Practice Act that a witness need not "give an answer which will have a direct tendency to degrade his character, unless it be to the very fact in issue, or to a fact from which the fact in issue would be presumed." His privilege, therefore, would not shield him from answering the question.

When the defendant became a witness in his own behalf he subjected himself to all the rules regulating the examination and cross examination of witnesses. His privilege was no greater than that of any other witness. He dropped, for the time being, the character of a party, and took on that of a witness. On the cross examination the plaintiff's counsel asked him this question: "Did you ever call Mrs. Clark your 'Dear Carrie,' or your 'Dear Child?'" To which he replied: "I refuse to answer; when a man takes personal liberties with a woman, he should not come on the stand and swear to it." No one hearing this remark could doubt that he meant to be understood as having taken personal liberties with the plaintiff. The counsel then asked him: "Did you ever take improper liberties with Mrs. Clark?" And, after the witness stated that he did not understand the question, it was put in unmistakable language. The witness declined to answer, and the Court held that he must answer or be committed for contempt; and afterwards, on motion of the plaintiff's counsel, it was held that if the question was not answered the plaintiff would be entitled to have the defendant's answer to the complaint stricken from the files, and to take judgment in accordance with the prayer of the complaint. Thereupon the defendant answered the question in the affirmative.

Was this question admissible? Had the witness, claiming

privilege, refused to answer the first question proposed, on the ground that his reply would establish one fact in a transaction tending to degrade his character, the inquiry would be different from the one before us. But in advance of any question tending to implicate him in a transaction of that character, he volunteers a statement by which he insinuates that he had taken personal liberties with the plaintiff. The plaintiff was clearly entitled to have direct answers, and a full explanation of the matter indirectly alluded to by the witness.

The defendant complains that the Court compelled an answer to the question by the threat to strike from the files the defendant's answer, and give judgment for the plaintiff. The section of the Practice Act cited by the defendant's counsel—section four hundred and twenty—is applicable only in case where a party calls on the adverse party to attend and testify as a witness on his behalf. But section four hundred and nine applies in a case like the present. It is there provided, among other matters, that upon a refusal to answer as a witness, if the witness be a party, his complaint may be dismissed or his answer stricken out.

The instructions given by the Court very fully and fairly present the law applicable to the facts in issue. The instructions requested by the defendant are, in some respects, more precise than those given, but the latter substantially comprise the former; and we are of the opinion that the defendant suffered no injury from their refusal.

Judgment affirmed.