[Filed June 14, 1887.]

# HENRIETTA M. KELLEY, RESPONDENT, *v.* WILLIAM F. HIGHFIELD, APPELLANT.

BREACH OF PROMISE— EVIDENCE— RELATIONS OF PARTIES.—Upon the trial of an action for breach of promise, to enable the jury to understand the relations between the parties, their acts and feelings toward each other during the entire existence of the contract, as well as the causes and circumstances which attended the breaking of the engagement, evidence may be given of the declarations of the parties on those subjects.

BILL OF EXCEPTIONS— WHAT IT MUST SHOW.—A question to a witness, and the ruling of the court refusing to allow it to be answered, and the exception, present no question for review.   The bill of exceptions ought to disclose the particular facts sought to be elicited by the question.

GENERAL REPUTATION— HOW PROVEN.— Witness must first be asked touching his knowledge of the party's *general* reputation, and he may be then asked whether it is good or bad, if found to possess sufficient knowledge on that subject.

PROFESSIONAL WITNESS— DISCLOSURE OF FACTS LEARNED PROFESSIONALLY.—A physician cannot without the consent of his patient be questioned concerning any facts learned by him in the course of his professional employment.

ARGUMENT OF COUNSEL BEFORE JURY— NOT TO COMMENT ON FACTS EXCLUDED BY COURT.—Upon the trial before the jury, it is improper for counsel to refer to or in any manner animadvert upon the plaintiff's refusal to consent that her physician be examined.   It is a privilege which the law secures, and it is not to be questioned.

KNOWLEDGE OF LEWDNESS— ITS EFFECT UPON THE CONTRACT.—If a man knowingly enter into a contract of marriage with a lewd woman, he is bound to perform his contract or pay such damages as a jury may deem proper under all the circumstances.

GOOD FAITH OF THE DEFENDANT—EFFECT OF PLEADING.WANT OF CHASTITY AS A
DEFENSE.— When the court in effect told the jury that if the defendant made
the charges set up in his answer in good faith, believing that there were grounds
for it, and the conduct of the plaintiff had been so imprudent as to furnish him
grounds for it, and this conduct had come to his knowledge after the renewal of
this contract with her, and he repudiated it by reason of this conduct of hers,
of this belief that he had entertained, then you should not allow the circum-
stances to weigh as much in the assessment of damages as if he. had made the
charges recklessly, wantonly, and wilfully; but you will take the circumstances
all into view, and inquire "How has he made the charge? Has it been a reckless,
wanton, or malicious charge, or has it been done in good faith? You will
determine the manner and *animus* of this defense, as well as the question of the
amount of damages." *Held*, not error.

MEASURE OF DAMAGES IN ACTIONS FOR BREACH OF PROMISE.— In such case there is
no fixed rule of damages, other than the sound discretion of the jury, under all
the circumstances. They may allow punitory damages in their discretion.

INSTRUCTION MUST NOT WITHDRAW FACTS IN EVIDENCE FROM THE JURY.— A hypo-
thetical instruction which fails to notice material facts in evidence, and which
attempts to submit the case to the jury on the assumption that such facts were
not in evidence, is erroneous, and the court did not err in refusing it. The effect
of such an instruction is to withdraw material facts from the consideration of the
jury.

DAMAGES—EFFECT OF ANSWER SETTING UP WANT OF CHASTITY.— The defendant by
his answer alleged that the plaintiff was unchaste, but offered no evidence tend-
ing to prove such allegations, other than his own criminal conduct with the
plaintiff. Under such circumstances, there is nothing upon which the claim of
good faith can be predicated.

APPEAL from Multnomah County.

*W. Carey Johnson*, for Appellant.

*John H. Mitchell*, for Respondent.

STRAHAN, J.—This is an action to recover damages for
breach of a promise to marry. The complaint alleges mutual
promises of marriage between the parties on or about December
17, 1877, the marriage to take place within a reasonable time
thereafter. It is also alleged in the complaint that by the mutual
consent of the parties, the marriage ceremony was postponed from
time to time during the subsequent years down to and until about
the sixth day of April, 1885, at which time it was mutually
agreed that such marriage ceremony, which by mutual consent
of the parties had been postponed until that time, should be again
postponed until on or about the last of the month of July, 1885,
and that said marriage should then take place between said par-

ties in pursuance of the original engagement to marry made in December, 1877, the performance of which said marriage ceremony had been postponed as in complaint alleged. The complaint then alleges the breach on the part of the defendant, her demand that he perform his agreement at various times subsequent to the last day of July, 1885, and prayer for twenty thousand dollars damages.

The defendant's amended answer denies specifically each material allegation of the complaint. The answer then sets up a number of separate defenses, in substance as follows:—

"Defendant for a further and separate answer and defense, alleges that on or about the eighteenth day of September, 1885, the plaintiff voluntarily abandoned said alleged marriage contract, and voluntarily and wholly released the defendant from all obligation she claimed against him under said pretended contract before said date.

" And for a further and separate answer and defense, the defendant alleges that *after* the date of the pretended contract alleged in the complaint, the plaintiff *became and was* a woman of bad reputation for chastity; and so conducted herself in her intercourse with men, as to establish for herself the reputation of a common or lewd woman, and was so reputed to be for more than five years before the commencement of this action.

"And for a further and separate answer and defense, the defendant alleges that *after* the date of the pretended contract alleged in the complaint, the plaintiff became and was a common prostitute, and continued to deport herself as such for more than five years before the commencement of this action, at and about buildings, occupied, used, and controlled by her, about the corner of B and First streets, in the city of Portland, Multnomah County, Oregon.

"And for a further and separate answer and defense, the defendant alleges that after the date of the pretended contract alleged in the complaint, the plaintiff committed the crime of adultery, and did have carnal sexual intercourse on or about the twenty-fifth day of April, 1885, at her residence near the corner of B and First streets, in the city of Portland, Multnomah

County, Oregon, with a man whose name is to this defendant unknown, and as to whose identity he is unable to make any more particular statements.

"And the defendant for a further and separate answer and defense, alleges that on or about the twenty-fifth day of December, 1884, at her place of residence near the corner of B and First streets, in the city of Portland, Multnomah County, Oregon, the plaintiff committed the crime of adultery, and did then and there have carnal sexual intercourse with a man whose name is to this defendant unknown, and as to whose identity he is unable to make any more particular statements.

"And the defendant for a further and separate answer and defense, alleges that *after* the dates of the pretended contract set out in the complaint, the plaintiff, at her place of dwelling near the corner of B and First streets, in the city of Portland, Oregon, did for more than five years next preceding the commencement of this action carry on the business of selling the use of her person in sexual intercourse with men for hire, and at divers and sundry times, and from time to time during said five years did commit the crime of adultery in carrying on such business, and did have carnal sexual intercourse with divers and sundry and numerous men whose names are to this defendant unknown, which unlawful conduct of plaintiff came to the defendant's knowledge since December 17, 1877."

A reply was filed, putting the new matter in the answer in issue. Upon this state of pleadings, a trial was had before a jury in Multnomah County, which resulted in a verdict for the plaintiff for fourteen thousand dollars. The defendant's counsel moved to set the verdict aside and for a new trial, and upon this motion the court put the plaintiff to her election, to either consent to take a judgment for seven thousand dollars and remit the excess, otherwise a new trial was to be granted. The plaintiff elected to take judgment for seven thousand dollars, which was duly entered, from which judgment this appeal is taken.

Numerous errors are assigned in the notice of appeal, to which a more particular reference will now be made in their order.

The plaintiff called one A. P. Butler as a witness, who testified in substance, that on or about the first day of June, 1885, he had a barber shop in the plaintiff's premises and near her dwelling; the defendant came to where the witness was standing near such barber shop. Plaintiff asked said witness this question:—

"State what he (Highfield) said, if anything, in reference to Mrs. Kelley, the plaintiff in this case, or about her." To which question an objection was made, but the court overruled the objection, and an exception was taken, and the witness answered: "Highfield came up to me and I was turned; had my back to him; he hit me on the shoulder, and said: 'How do you do?' shook hands with me; talked with me for awhile about Mrs. Kelley.

"Question. State just what he said.

"Answer. Wanted to know if Mrs. Kelley was at home; I told him I didn't think she was; I saw Mrs. Kelley going up the street; he says, 'I think Johnny Pillsbury is down from Oregon City, and I think she has gone out to give Pillsbury a chance.' Mr. Highfield took some cigars out of his pocket, and gave me a cigar, and kept looking up stairs all the time from the shop, and he says: 'I hear there is a nice-looking girl over my place in the hotel.' He said he had heard there was a nice-looking girl there, and he would like to go up and see her, but he was afraid Mrs. Kelley would see him; so I told him he need not be afraid, he could go up if he wanted to. He said: 'I am afraid to go up there, but,' he says, 'I will go if you will go with me,' and I said, 'all right, I will go along with you.' I went up stairs ahead of him, and he followed me up; when I got to the head of the stairs I rapped on the door, and she came to the door, and I says, 'this is Mr. Brown.'

"Q. Do you know the girl's name?

"A. They call her Little Casino.

"Q. Was that her name?

"A. I don't know her name; I had seen her several times; but I don't know her name; I rapped at the door and she came to the door; I says, 'this is Mr. Brown.'"

The introduction of all this evidence was excepted to, and is now claimed that its reception was erroneous.

This evidence was properly received. It was important for the jury to understand the relations between these parties; their acts and feelings toward each other during the entire existence of the contract, as well as the causes and circumstances attending the breaking off of the engagement. (*Simmons* v. *Simmons*, 8 Mich. 318.) Besides this, the declarations and admissions of the defendant which necessarily tended in any way to wound plaintiff's feelings were certainly proper for the consideration of the jury. Says a late author on this subject: " . . . . The jury may take into consideration all the facts and circumstances of the case, and the conduct of both parties towards each other, and particularly the conduct of the defendant in his whole intercourse with and treatment of the plaintiff in connection with the making and breach of the contract, and afterwards up to and including the defense and trial of the action." (3 Sutherland on Damages, 321; *Reed* v. *Clark*, 47 Cal. 199; *Grant* v. *Willey*, 101 Mass. 357; *Johnson* v. *Jenkins*, 24 N. Y. 252.)

The exception taken to the refusal of the court to allow the witness Fred Meyer to answer the question propounded to him is not available. The witness did not answer, and it nowhere appears from the bill of exceptions what fact appellant expected to elicit by the question. To make this exception available the bill of exceptions ought to have gone further and shown what it was expected to prove by the answer to this question. And the same remark is applicable to the question propounded to the witness Dr. H. W. Ross, which was excluded. Defendant's counsel asked the witness W. H. Watkins, who was the defendant's witness, this question: "You have been asked about the character of the plaintiff before the commencement of this action; now you may state since, whether you have heard it more frequently discussed." This question was also objected to, and the witness was not allowed to answer it, to which an exception was taken; but this exception presents no questions we can review, for the reasons already stated. But this question ought not to have been answered, for the reason that it is not so

framed as to elicit any fact that would be competent evidence. If it were competent in such case to prove reputation, the proper question must be propounded to enable the witness to answer as to his knowledge of the plaintiff's *general* reputation, and not which was wholly immaterial, whether he had heard the plaintiff's character more frequently discussed before or after the action was commenced. (*Page* v. *Finley,* 8 Or. 45; *State* v. *Clark,* 9 Or. 467.)

*Physician not required to testify.* Dr. Saylor could not be required to disclose any facts which he learned in the course of his professional employment, nor could the plaintiff be prejudiced because he declined to answer those questions; and it was improper on the argument before the jury for the defendant's counsel to refer to the matter, or to animadvert upon the plaintiff's failure to consent, or insist that Dr. Saylor should tell all he knew about the facts. No such duty or obligation was placed upon her by any law, and unless it can be shown to exist she could not be prejudiced by her silence. Nor is this all. It is upon the evidence which is admitted to go to the jury that a cause must be tried, and not upon that which is excluded. (*Carne* v. *Litchfield,* 2 Mich. 343; *State* v. *Andrews,* 10 Or. 456.) These exceptions cannot be sustained.

The defendant testified that he never at any time promised to marry the plaintiff, but had had sexual intercourse with her, for which he paid her money at the time or times of such intercourse; and there was evidence tending to show that the plaintiff was unchaste after December, 1877, and that the defendant had knowledge of it prior to the last alleged postponement of said marriage.

Several witnesses on the part of the defendant were called, whose testimony tended to show that the general reputation of the plaintiff for chastity and virtue among her acquaintances since December, 1877, and up to the commencement of this action, was bad. The defendant also introduced testimony tending to show that the plaintiff was a coarse and vulgar woman; that she rented her property for saloons, barber shops, and a variety theater, and that for several months in 1885 a part of her building

near her dwelling was rented to an Italian who rented rooms therein for women or girls for lewd purposes; and that she herself had asked one person where he got his "skyving" when he came to Portland, and that at times she used profane language.

The court, among other things, charged the jury as follows: " It is necessary in order that the defense of lewd conduct on the part of the plaintiff to become available to the defendant should have come to his knowledge after this last postponement. If not, it is not available to him." The court further charged the jury on the same subject as follows: " If he knew at the time of the last postponement of this marriage that she had such a character as he has attributed to her in his answer, and still repeated the promise and agreed to marry her in July, or at any time after that date, he cannot avail himself of a want of chastity on her part (if it existed) as a defense." To each of these charges an exception was taken. By these charges the court, in effect, told the jury that if the plaintiff was a lewd woman, and the defendant knew it at the time of the promise or of any renewal thereof, then such fact would not constitute a defense to the action. There is no error in this. If a man knowingly will enter into a marriage contract with a lewd woman, he is bound to perform his agreement or pay such damages as a jury may deem proper under all the circumstances of the case. To hold otherwise would be at variance with the settled rule of the law on the subject. (*Espey* v. *Jones*, 37 Ala. 379; *Berry* v. *Bakeman*, 44 Me. 164; *Butler* v. *Eschleman*, 18 Ill. 44; *Clarke* v. *Reese*, 35 Cal. 89; *Burnett* v. *Simpkins*, 24 Ill. 264; *Bell* v. *Eaton*, 28 Ind. 464; *Snowman* v. *Wardwell*, 32 Me. 275.)

The appellant also excepted to the following portion of the charge to the jury: "And further than that, you should take into consideration this attempted defense and failure to establish it. But the manner in which this is to be taken into consideration, and the question by which you are to consider it, you will observe in assessing damages. If he made this charge against her knowing that it was untrue, that is, the general want of chastity and intercourse with other men, knowing that it was untrue, and having no reasonable ground to believe that it was

true, or if he made the charge with the belief or supposition on his own part that nobody else had been having intercourse with her besides himself, then the failure to prove the allegation and the fact of his own intercourse with her ought to be taken by you in aggravation of the charge and in aggravation of the damages which should be assessed."

And the appellant's counsel also excepted to the following portion of the court's charge to the jury: "If, however, he made the charge in good faith, believing that there were grounds for it, and the conduct of the plaintiff had been so imprudent as to furnish him grounds for it, and the conduct had come to his knowledge after he renewed the contract with her, and he repudiated the contract by reason of this conduct of hers and of this belief that he had entertained, then you should not allow that circumstance to weigh as much in the assessment of damages as if he had made the charge recklessly, wantonly, and maliciously." Another exception on the same subject was made by the appellant to the refusal of the court to give certain instructions to the jury asked by him, which are as follows: "The court is asked by the defendant to charge the jury that the defendant is entitled to set up the bad character of the plaintiff as a defense to this action."

Such defense the law allows to be made, and to be made available must be spread upon the records, that is, it must be pleaded.

"If the defendant sets up this defense in good faith under circumstances which would warrant a cautious attorney in the belief and expectation that it can be established by testimony, and if on the trial evidence is produced of a character proper to be submitted to the jury in support of the defense, the jury should not, either from sympathy with the plaintiff, in case you should find the weight of evidence in her favor, allow that circumstance to aggravate the damages. In other words, if, in making this defense, the defendant acts in good faith with probable cause and with a reasonable expectation that he can establish it, he should not be punished even if he fail."

It is also proper in this connection to set out the entire charge of the court on this point:—

"Another matter of defense that after the date of the alleged contract of marriage between them she became and was a lewd woman, and the substance of that charge, is repeated in several forms, to the effect that she committed adultery at a certain place and at certain times with persons to the defendant unknown; another, that she kept a house of prostitution; another, that she habitually, for a considerable length of time, sold her person for hire—the whole of these allegations, amounting to a charge of gross lewdness, he says, came to his knowledge after the alleged contract of marriage was made. Now it is alleged in the complaint, and there is evidence tending to show it, that after December, 1877, this matter was in negotiation between the parties in the shape of postponements, repetitions of what the agreement was, and repetitions and promises that the marriage would be consummated at some future day after the date of the particular negotiations, and postponements were repeated and continued until April, 1885, at which time the same matter was again talked about and assented to—the contract assented to—and at the time postponed until some time in July of that year. These various postponements, if you believe that they took place in the manner alleged, may be considered by you as renewals of the contract, repetitions of it, and confirmations of it.

"It is necessary, in order that the defense of lewd conduct on the part of the plaintiff may become available to the defendant, it should have come to his knowledge after this last postponement, if not, it is not available to him; but of that I will speak further hereafter.

"Consider first now the defense of the release. There are various ways in which a release from a contract of this kind may be made. One way would be a proposition or request to the party defendant by the plaintiff that the defendant should marry some other person, and if you believe from this testimony and are satisfied that this plaintiff, on or about that time, in September, did request the defendant to marry her daughter—proffered her daughter to him in marriage—you are at liberty to conclude that a release was intended and made by the plaintiff of the defendant from the contract which she claimed before

that to have existed with her. I say it would be a release if you find that fact, and are satisfied from the testimony that it existed. But the burden of proving that is on the defendant. He has alleged it, and he must make it out by testimony that is satisfactory to you. Proceeding to the other defense—want of chastity—the defendant has alleged it, and then the rule applies to him again.

"The burden is on him to establish to your satisfaction if he knew at the time of the last postponement of his marriage that she had such a character as he has attributed to her in his answer, and still repeated the promise and agreed to marry her in July, or at any time after that date, he cannot avail himself of the want of chastity on her part, if it existed, as a defense.

"Something has been said in the testimony concerning his having cohabited with her during that time.

"I instruct that is no defense to him, if the promise of marriage existed. It is no release from its obligations or from liability from its breach, if he himself during the time subsequent to his promise was cohabiting with her, or if he knew that other persons were cohabiting with her, and assented to it so far as to renew the promise with her. Now as to the effect of this defense you are to consider (if you come to that), if you find that the promise of marriage existed and that this defense had not been made out—either of these defenses has not been made out—to your satisfaction, then it will become your duty to assess damages, and you are to take into consideration in assessing the damages all the circumstances that have been laid before you on the trial. Consider the parties, their ages, their standing in society, their pecuniary condition, the loss which the plaintiff sustains in worldly emoluments by the breach of the contract, if there has been a breach, the injury to her feelings, her prospects in life, the interruption which this contract has been, if any, to her business, by which she might have changed her affairs in life, all these circumstances must be taken into consideration by you.

"And further, that you should take into consideration this attempted defense, and the failure to establish it. But the man-

ner in which that is to be taken into consideration, and the question by which you will consider it, you will observe in assessing damages. If he made this charge against her knowing that it was untrue—that is, the charge of general want of chastity and intercourse with other men, knowing that it was untrue—and having no reasonable grounds to believe that it was true, or if he made the charge with the belief or supposition on his own part that nobody else had been having intercourse with her besides himself, then the failure to prove the allegation, and the fact of his own intercourse with her, ought to be taken by you in aggravation of the charge, and in aggravation of the damages which should be assessed.

"If, however, he made the charge in good faith, believing that there were good grounds for it, and the conduct of the plaintiff had been so imprudent as to furnish him grounds for it, and this conduct had come to his knowledge after he had renewed the contract with her, and he repudiated the contract by reason of this conduct of hers, and of this belief that he had entertained, then you should not allow this circumstance to weigh as much in the assessment of damages as if he had made the charge recklessly, wantonly, and maliciously; but you will take the circumstances all into view and inquire, if you come to that question, how has he made the charge? Has it been a reckless, a wanton, malicious charge, or has it been made in good faith? You will determine the question of the manner and *animus* of this defense, as well as the question of the amount of damages. I allude to one thing further concerning the pleadings. It is admitted by these pleadings that the plaintiff was ready and willing, in September, 1885, and since, up to the commencement of this suit, to marry the defendant, and it is admitted that she demanded marriage in September, 1885, and it is admitted that he refused; so that matter need not be inquired of, since it is admitted on the face of the record."

The court further instructed the jury on the subject of damages:—

"If you find the contract was made, has been broken, and consider the question of damages, you may take into consider-

ation the character of the plaintiff, if it is subject to any criticism on your part, and if she is a woman of coarse manners, gross in her association, and imprudent, careless, and reckless in regard to her conduct and demeanor, these circumstances you may take into consideration in assessing damages; such a woman is not injured to the same extent by a breach of promise of marriage that one more confiding, retiring, and modest would be.   Understand, that I am passing no judgment upon the plaintiff or suggesting that you shall pass any judgment upon her, but I wish you to understand that if you think she deserves consideration of that kind, it is to your privilege and duty to give such consideration to that phase of the matter as you 'think it deserves."

Counsel for the appellant now insist that the foregoing instructions given by the court do not present a correct view of the law to the jury, and they claim that the court should have told the jury explicitly that if the defendant set up his defense in good faith, believing it to be true, and having reasonable grounds to believe it to be true, they could not consider the fact in aggravation of damages.   And to sustain their contention they cite *Powers* v. *Wheatley*, 45 Cal. 113; *Fidler* v. *McKinlay*, 21 Ill. 308; *Burnett* v. *Simpkins*, 24 Ill. 265; *Denslow* v. *Van Horn*, 16 Iowa, 476; *Leavitt* v. *Cutler*, 37 Wis. 46; *White* v. *Thomas*, 12 Ohio St. 312; *Rayner* v. *Kinney*, 14 Ohio St. 286.

Upon the other hand, counsel for respondent contend that when a defendant attempts to justify his breach of promise of marriage by stating upon the record as the cause of his desertion of the plaintiff that she had repeatedly had criminal intercourse with various persons, and fails entirely in proving it, this is a circumstance which ought to aggravate the damages; and to sustain this position counsel for respondent cite *Thomas* v. *Knapp*, 42 N. Y. 475; *Southard* v. *Rexford*, 6 Cowen, 254; *Davis* v. *Slagle*, 27 Mo. 603; *Kniffen* v. *McConnell*, 30 N. Y. 285; *Johnson* v. *Jenkins*, 24 N. Y. 252; *Wills* v. *Padgitt*, 8 Barb. 323; *Burns* v. *Beach*, 1 Lans. 268; *Reed* v. *Clark*, 47 Cal. 203.

We do not feel called upon in this case to undertake to review or to attempt to reconcile any apparent conflict there may be in these cases.   The court in its charge evidently might have gone

XV. OR.—19.

further either way and found language in these cases to have sustained it. The court told the jury in effect that if the defendant made the charges set up in the answer in good faith, believing that there were grounds for it, and the conduct of the plaintiff had been so imprudent as to furnish him grounds for it, and this conduct had come to his knowledge after he renewed the contract with her, and he repudiated the contract by reason of this conduct of hers, and of this belief that he had entertained, then you should not allow the circumstance to weigh as much in the assessment of damages as if he had made the charge recklessly, wantonly, and maliciously; but you will take the circumstances all into view and inquire, how has he made the charge? Has it been a reckless, a wanton, malicious charge, or has it been made in good faith? You will determine the question of the manner and *animus* of this defense as well as the question of the amount of damages. This charge fairly submitted to the jury, on the one hand, the nature and character of the imputations cast upon the plaintiff, the manner and motives by which he was prompted; and on the other, the question whether or not the charges were made in good faith. The jury were bound to understand from this instruction that if there was no cause for making the charges, and the defendant was actuated by malice, wantonness, and recklessness, then they might add something to the damages on account thereof; but if otherwise — if good faith prompted the defendant — he was to have the benefit of it in estimating the damages. That is to say, the wrong which the plaintiff has suffered by having these groundless and most damaging charges spread upon the records of the court, where they must forever remain, is not wholly atoned for by the defendant's good faith, because good faith cannot atone for the wrong. Still it must be considered by the jury in estimating how much the defendant ought to pay for that wrong.

In this class of actions the damage⸗ e so entirely in the discretion of the jury that nothing b⸗ ⸗ most general rules of law can be applied. Though iⱱ' an action founded on contract, it partakes more of a⸗ growing out of tort. There is no fixed rule of dam the jury may, in the

exercise of a sound discretion, allow punitory damages, that is, such an amount over and above all actual damages as in their opinion are proper, by way of punishing the defendant, and such as may tend to deter others from being guilty of the like breaches of a legal and social duty. And for the purpose of enabling them to reach a proper conclusion as to the amount of damages, they have a right to consider the entire course of conduct of the parties toward each other up to and including the time of the trial. There can be no doubt if the defendant's desertion of the plaintiff was without cause, or his conduct at the time toward her, or afterwards, was harsh, cruel, or malicious, or if at any time, even upon the trial, he makes a wrongful attempt to blacken her name or reputation, the jury have a right to consider it, and may, if they think proper, add something to the amount of damages on account of such new or additional wrong. If the instruction asked by the appellant and refused by the court is good law, as to which it is unnecessary to express an opinion in this case, still its refusal was not error, for the reason that it was inapplicable to the particular facts disclosed by the bill of exceptions. If the plaintiff was unchaste or her life was impure after December, 1877, the testimony offered tended to show that the defendant knew it, and according to the defendant's own confession, he was equally guilty with her. This instruction wholly ignores the effect of the defendant's knowledge of the plaintiff's want of chastity, and his admitted criminal indulgence with her in its bearing upon the question of damages. If the defendant promised to marry the plaintiff knowing her to be unchaste, and then refused to perform his agreement for that reason, this fact would not constitute a defense. It might mitigate the damages, but it could not defeat the action. On the other hand, if the defendant himself had for a long time been in the habit of having sexual intercourse with the plaintiff, it is difficult to see on what ground he could charge her, "in good faith," with a want of chastity. It is believed that under the authorities, such conduct does not tend to mitigate, but greatly aggravates the damages. The defendant having testified upon the trial to his own improper conduct with the

plaintiff, could not wholly ignore the possible effect such evidence might have on the minds of the jury. It was evidence tending to prove the defendant's allegations, or some of them, that the plaintiff had led an impure life, at least in the particular instances mentioned by the defendant. What effect that evidence might have on the amount of damages to be awarded to the plaintiff, if any, was entirely for the jury; but the necessary effect of the instruction asked was virtually to withdraw the consideration of these particular facts from the jury, and to treat the case precisely as though no such evidence had been given. This we think the defendant was not at liberty to do. In addition to this, there was no evidence offered upon the trial tending to prove any of the criminal conduct charged against the plaintiff in the defendant's answer, except her conduct with the defendant himself. In the absence of such proof, or some proof tending to establish the facts alleged, it is not perceived on what grounds the defendant could predicate his good faith. Those charges are of most serious import and ought not to be lightly made, and when made, a defendant ought to be able to show some cause for making them; in other words, he ought to be able to offer some evidence which would tend to prove the charge. Here there is no evidence whatever tending to prove these particular charges, except the defendant's evidence as to his own criminal conduct. In this respect, also, the refusal of the instruction was correct because it was too broad. It included matters upon which no evidence had been offered. It follows that the judgment appealed from must be affirmed.

On petition for rehearing.

STRAHAN, J.—In disposing of a question of practice which was presented in this case, it is said in the prevailing opinion: "The exception taken to the refusal of the court to allow the witness, Fred Meyer, to answer the question propounded to him is not available. The witness did not answer, and it nowhere appears from the bill of exceptions what fact appellant expected to elicit by the question. To make this exception available, the bill of exceptions ought to have gone further and shown what it

was expected to prove by the answer to this question. And the same remark is applicable to the question propounded to the witness, Dr. H. W. Ross, which was excluded."

In his petition for rehearing, this statement of the law is questioned by counsel for appellant, which has led to a re-examination of the subject, the result of which is, the affirmance of the ruling upon the authority of the following cases: *Bake* v. *Smiley*, 84 Ind. 212; *Whitehead* v. *Mathaway*, 85 Ind. 85; *Jordan* v. *D'Heur*, 71 Ind. 199; *The Toledo and Wabash Ry. Co.* v. *Goddard*, 25 Ind. 185; *Watson* v. *Mathiews*, 36 Tex. 278; *Sacramento and Nev. Mining Co.* v. *Small*, 40 Me. 274; *State* v. *Staley*, 14 Minn. 105; *Mathiews* v. *The State*, 44 Tex. 376; *Lewis* v. *Lewis*, 30 Ind. 257; *Stull* v. *Wilcox*, 2 Ohio St. 569; *Hallister* v. *Riznor*, 9 Ohio St. 1; *Gandolfo* v. *The State*, 11 Ohio St. 114; *Gage Manuf. Co.* v. *Parr*, 138 Mass. 462; *Grarter* v. *Williams*, 55 Ind. 451; *Mitchell* v. *Chambers*, 55 Ind. 289. The general rule of law which these authorities tend to sustain is thus stated in *Grarter* v. *Williams, supra:* "But where a party on the trial of a case has propounded a question to a witness with a view of eliciting evidence, to which question objection has been sustained by the court, such party cannot, by simply saving an exception to the decision of the court, in sustaining such objection, get error into the record, which will be available to him in this court.

In such case the party must go further, and state to the court in which his cause is being tried, clearly and explicitly, what the evidence is which he offers to adduce, and which he expects to elicit "by the answer of the witness to the question." And in *State* v. *Staley, supra,* the rule is thus stated: "To justify a reversal of judgment, the record must show affirmatively material error. When a question is asked which is objected to, and the objection sustained, in taking an exception it should be made to appear what it was proposed to prove, which must be something material, and the rejection of which as evidence would be prejudicial to the party excepting." And the same principle is enunciated in *Gandolfo* v. *The State, supra,* thus: "When a question is objected to, and the objection sustained in taking an

exception, there should be a statement of what it was proposed to prove, which must appear to be something material, and the rejection of which as evidence would be prejudicial to the party excepting."

We have given the appellant's petition for a rehearing a careful examination, and find no reasons for modifying the opinion already filed in this case. No new questions are suggested, and those already considered do not require a further examination. A rehearing would only lead to the result already reached by a majority of the court; it should be denied. And it is so ordered.

THAYER, J., concurring.—The action in the court below was for a breach of marriage contract between the parties herein, alleged to have been made on the seventeenth day of December, 1877, and the celebration thereof, to have been postponed at various times during the subsequent years, down to on or about the sixth day of April, 1885; that such contract was entered into by the appellant and respondent must, for the purposes of this appeal, be taken as true. The finding of the jury in any view of the case is conclusive upon that point. This court must assume that the appellant and respondent agreed to intermarry, and that the appellant violated the agreement as alleged in the complaint. There is no claim that the Circuit Court did not fairly submit that question to the jury; and that they found such to have been the fact by their finding for the respondent cannot be denied at this time. There are but two matters, therefore, which need be considered. The one is the matter of defense as a bar; the other, the matter of partial defense or mitigating circumstances. The appellant alleged in his answer the following new matter:—

"Defendant, for a further and separate answer and defense, alleges that on or about the eighteenth day of September, 1885, the plaintiff voluntarily abandoned said alleged marriage contract, and voluntarily and wholly released the defendant from all obligation she claimed against him under said pretended alleged contract before said date.

"And for a further and separate answer and defense, the defendant alleges that after the date of the pretended contract alleged in the complaint, the plaintiff *became and was* a woman of *bad reputation for chastity; and became and was* reputed to be an unchaste woman; and so conducted herself in intercourse with men, as to establish for herself the reputation of a common or lewd woman, and was so reputed to be for more than five years before the commencement of this action.

"And for a further and separate answer and defense, the defendant alleges that *after* the date of the pretended contract alleged in the complaint, the plaintiff *became and was* a common prostitute, and continued to deport herself as such for more than five years before the commencement of this action, at and about buildings occupied, used, and controlled by her about the corner of B and First streets, in the city of Portland, Multnomah County, Oregon.

"And for a further and separate answer and defense, the defendant alleges that *after* the date of the pretended contract alleged in the complaint, the plaintiff committed the crime of adultery, and did have carnal sexual intercourse on or about the twenty-fifth day of April, 1885, at her residence near the corner of B and First streets, in the city of Portland, Multnomah County, Oregon, with a man whose name to this defendant is unknown, and as to whose identity he is unable to make any more particular statements.

"And the defendant, for a further and separate answer and defense, alleges that on or about the twenty-fifth day of December, 1884, at her place of residence near the corner of B and First streets, in the city of Portland, Multnomah County, Oregon, the plaintiff committed the crime of adultery, and did then and there have carnal sexual intercourse with a man whose name is to this defendant unknown, and to whose identity he is unable to make any more particular statements.

"And the defendant, for further and separate answer and defense, alleges that after the dates of the pretended contracts set out in the complaint, the plaintiff, at her place of dwelling near the corner of B and First streets, in the city of Portland,

Oregon, did for more than five years next preceding the commencement of this action carry on the business of selling the use of her person in sexual intercourse with men for hire, and at divers and sundry times, and from time to time during said five years, did commit the crime of adultery in carrying on such business, and did have carnal sexual intercourse with divers and sundry and numerous men whose names are to this defendant unknown, *which unlawful conduct of claimant came to defendant's knowledge since December* 17, 1877."

No attempt was made to plead a partial defense. Proof was submitted upon the part of the appellant tending to show that the respondent was coarse in her manner and conversation, gross in her associations, and imprudent in her conduct and demeanor; that she rented her property, consisting of buildings situated near her own residence, to persons of questionable reputation; that her character for chastity and virtue was not good in the community where she was known; and that upon one occasion she made a vulgar and lewd inquiry of a male acquaintance whom she met upon the streets of Portland; but no proof was made tending directly to establish the charges of adultery and prostitution contained in the answer; nor does it appear that any evidence was offered by the appellant for the avowed purpose of mitigating the damages. All the proof upon his part seems to have been offered in view of the defenses set forth in the answer, and which were controverted by the respondent. In that condition of the controversy the case was submitted to the jury. It is evident to my mind that the defenses referred to were not only unproven, but that the evidence offered, standing by itself, was inadmissible for that purpose. It cannot, certainly, be maintained that the defense, that the respondent, after the date of the alleged contract of marriage, became and was a woman of bad reputation for chastity, etc., could be established by proof that her reputation was bad in that respect, without showing that it became bad after the time alleged; nor that the defense, "that after the date of the pretended contract alleged in the complaint the plaintiff committed the crime of adultery, and did have carnal sexual intercourse on or about the 25th day of April,

1885, at her residence, near the corner of B and First streets, in the city of Portland," was established, by proving that she was a coarse woman, etc., as before mentioned; such proof may have been material evidence in the case — may have shown that the respondent was not entitled to damages beyond one cent — but, clearly, it did not make out the defense alleged, and for that purpose was wholly futile. There is a wide difference in proof tending to show that the plaintiff, since the making of the contract of marriage, had done acts that legally absolved the defendant from observing it, and proof that tended to show that the plaintiff was such a course, vulgar woman that she had not been damaged in consequence of a breach of the contract; but in the trial of this case, no such distinction seems to have been kept in view. In such a case, where a defendant has interposed a specific full defense, and offers evidence generally, which is objected to as irrelevant and immaterial, and which is insufficient to prove such defense, but is relevant to prove mitigating circumstances, he should declare the purpose for which he offers the evidence if he wants the benefit of it upon the latter ground, otherwise it would necessarily lead to confusion. The presiding judge at the trial usually announces in such cases that he will permit the evidence, though offered generally in the action, to be received in mitigation of damages, but he may not always be able to make the discrimination, nor the defendant's counsel be willing to accept of such ruling. An exception to be tenable in such a case must be taken to the refusal to admit the evidence after the party producing it indicates the purpose for which it is offered. The mode here suggested is calculated to prevent the embarrassment to which the jury would be liable to be subjected if the evidence were admitted without specifying the object for which it is introduced, and the attention of the court will then be directed, in case of objection to its admission, to the particular point upon which it is called upon to rule. The appellant, in my opinion, should not be heard to complain when evidence, that is inadmissible to prove the defense alleged, is excluded upon that ground, although admissible in mitigation of damages, where it does not appear that he sought to have it admitted upon

the latter ground.   One of the questions in the case which has raised some doubts in the mind of the court, relates to the charge to the jury in regard to their taking into consideration the attempted defense, and failure to establish it, in the assessment of damages.   The court, in its instructions, told the jury in substance that if the appellant made the charge against the respondent of general want of chastity and intercourse with other men, knowing that it was untrue, and having no reasonable grounds to believe that it was true, then the failure to prove the allegation ought to be taken by them, in aggravation of the charge, and in aggravation of damages which should be assessed. If, however, the appellant made the charge in good faith, believing that there were grounds for it, and the conduct of the respondent had been so imprudent as to furnish him grounds for it, and this conduct had come to his knowledge after he renewed the contract with her, and he repudiated the contract by reason of this conduct of hers, and of this belief that he entertained, then they should not allow that circumstance to weigh as much in the assessment of damages as if he had made the charge recklessly, wantonly, and maliciously; but that the jury should take the circumstances all into view and inquire, if they came to that question, how had he made the charge?   Had it been reckless—a wanton, malicious charge—or had it been made in good faith?   The appellant's counsel contend that the part of the instruction here referred to is erroneous, as it allowed the attempted defense, and failure to establish it, to weigh to some extent in the assessment of damages, even though the jury should find that the appellant made it in good faith.   This seems to be the main ground of error in the case.

The Circuit Court evidently entertained the view that the failure to establish such a defense, if interposed in bad faith, knowing that it was untrue, etc., would aggravate the damages; that if interposed in good faith, under the belief that it was true, it would have less weight in the assessment of damages; but the court did not indicate how it would affect the subject in the latter case.   The inference, however, is that the failure to prove such defense might be considered by the jury as a circumstance,

in connection with the other circumstances referred to them by the court, to be taken into consideration in fixing the amount of damages, in event the respondent was found entitled to damages. Said counsel insist that if the defense is made in good faith, and upon probable cause, it is not to be considered by the jury in aggravation of damages at all. The instruction, however, does not include the hypothesis of there being probable cause for believing the defense to be true. The statement contained in the instruction is: "If the appellant made the charge in good faith, believing that there were grounds for it, and the conduct of the respondent had been so imprudent as to furnish him grounds for it," etc. And I think the supposition the court submitted contained a much broader statement than the facts in the case would justify. It would have required, it seems to me, a great amount of credulity upon the part of the jury to have believed that the charge was made in good faith. The appellant may have believed that the respondent was an unchaste woman; but there is nothing in the evidence to justify his allegation that she committed adultery at particular times and places, and his making such allegations without being able to produce any direct evidence of the fact, and making no attempt to prove specifically such charges, placed him in a very difficult position to claim that he made them in good faith. In view of the evidence, the jury were bound to conclude that those charges were false, and I am unable to discover how they could have found otherwise than that they were malicious. It was not pretended, as I understand the case, that in making the charges he acted upon any information he had obtained concerning the facts alleged. I refer to the specific facts concerning the adultery charged in the answer. He seems to have "just fired at random." Had there been probable cause for making the charges, the counsel's position might have been tenable; but I am unable to discover that there was any, and the court did not submit that question to the jury in the instruction. We must take the instruction as we find it; also the charge made by the appellant against the respondent's general want of chastity and intercourse with other men, and the evidence in the case in testing the correctness of the instruction.

The case before us is one in which the defendant has attempted to justify his breach of promise of marriage by alleging against the plaintiff in his answer, that since the time of the making of the promise she became and was a common prostitute, and continued to deport herself as such for more than five years before the commencement of the action, in and about a particular place; that she had been keeping a "whore-house," in fact, and been an out and out strumpet, and at particular times and places had carnal intercourse with men, had committed adultery, and been engaged in the business of selling the use of her person in sexual intercourse with men for hire.  He spread upon the records of the court, in strong and unmistakable terms, a damaging libel, and without proving its truth, attempted to shield himself from the entire consequences of his act, by claiming that he published it in good faith, believing it to be true.  What could be evidence of good faith upon his part, less than proof that the allegations were true, or, at least, that there was a good foundation for believing them true?  And if he believed them to be true, honestly entertained such a belief, how does that compensate the wrong he has done the respondent by declaring such scandalous matter perpetuating forever the evidence of it?  Such an act ought, it seems to me, have some weight in the assessment of damages, even under the circumstances supposed by the court.  Besides, it is perfectly evident that the appellant was not damaged by that qualification of the instruction.  An alternative made to depend upon the jury, finding that the appellant acted in good faith under the circumstances, was wholly valueless.

Another important question in the case is the refusal of the court to give the following charge to the jury: "The court is asked by defendant to charge the jury that the defendant is entitled to set up the bad character of the plaintiff in defense to this action.  Such defense the law allows to be made, and to be made available must be spread upon the records, that is, it must be pleaded.  If the defendant sets up this defense in good faith, under circumstances which would warrant a cautious attorney in the belief and expectation that it can be established by testimony, and if on the trial evidence is produced of a character proper to

be submitted to the jury in support of the defense, the jury shall not, either from sympathy with the plaintiff, in case you should find the weight of evidence in her favor, allow that circumstance to aggravate the damages.   In other words, if in making this defense the defendant acts in good faith with probable cause, and with a reasonable expectation that he can establish it, he should not be punished even if he fail."

Which instructions the court refused as asked, but instructed the jury concerning those matters as set forth in the general charge, to which refusal counsel for appellant excepted.

This proposed instruction, as an abstract proposition of law, I am inclined to think is substantially correct.   The grounds upon which the court refused it do not appear, but it is evident to my mind that the facts in the case, as I have before intimated, did not entitle the appellant to have it given.   There were six defenses interposed.   The first one, a voluntary abandonment by the respondent of the marriage contract, and release of the appellant from the obligation thereof.   The next two of them were alleged facts, that after the date of the contract the respondent became and was a woman of bad reputation for chastity, etc., and that she became and was a common prostitute. The other three relate to specific acts of adultery and prostitution with which the appellant charged her.   There is no pretense but that the defenses which claim that she abandoned the contract, or that she released the appellant from the obligation of it, were not fairly submitted to the jury; nor any evidence that she became or was, after the date of the contract, a woman of bad repute, or after such date became or was a prostitute. Testimony was given on the part of the appellant tending to show that the general reputation of the respondent for chastity and virtue since the date of the contract was bad, and an offer made to show that it was bad before that time; but there was nothing showing that it became bad after the date of the contract, as alleged in the answer.   This may not seem important — the time her reputation became bad — and yet it is so as a defense to the action.   The fact that a woman has a bad reputation for virtue does not entitle a man to violate a contract of

marriage he has entered into with her if he knew what her reputation was when he made the contract, though the fact may be shown in mitigation of damages, where it is offered for that purpose. The appellant claimed that he was relieved from the obligation of the contract for the reasons set out in said two answers, and the evidence he offered was immaterial as a defense, unless in accordance with the allegations therein contained. He probably was not able to deny but that he knew what her reputation was, and had been, at the time of and prior to the contract of marriage, and hence, it was necessary to allege that it became bad after that date. But, conceding that the evidence offered tended to establish those two defenses, what was there in the testimony to prove the other three. Evidence of her bad reputation, and that she was a coarse, vulgar woman, would have no tendency to prove that she committed adultery at some particular time and place, "or sold the use of her person." It would be absurd to claim any such thing, and yet, as I understand, that is all there was in the case to establish said defenses. "Probable cause" is supported by evidence which inclines the mind to belief, it is not a mere suspicion. It is something that is proved, not fully, but has more evidence for than against it. What was there in this case to show that the respondent committed adultery on the 25th day of April, 1885, or the 25th day of December, 1884, or that she carried on the business of selling the use of her person? Not anything that could be called proof, certainly. If she had been prosecuted for adultery, or for keeping a house of ill-fame, would any court have allowed the case to have gone to the jury on such pretended evidence as the appellant introduced in this case? It is idle to consider such a question. The New York courts, by an unbroken series of decisions from *Southard* v. *Rexford*, 6 Cowen, 254, down to the present time, have held, that where the defendant attempts to justify his breach of promise of marriage by stating upon the record, as the cause of his desertion of the plaintiff, that she had repeatedly had criminal intercourse with various persons, and fails entirely in proving such justification, it is a circumstance which ought to aggravate the damages. This doctrine, counsel

for the appellant claims, is subject to the qualification set out in the said instruction asked and refused, and I rather think he is right in that view; but I do not see how the distinction can be made in this case, for I do not think that three at least of the defenses were interposed with probable cause, or with a reasonable expectation that the appellant could establish them. To vilify and calumniate the respondent by vile charges which he must have known he could not maintain, ought not to be condoned by a plea that he did it innocently, and without intending harm. But he should make it appear, from evidence submitted upon his part, that he had reasonable grounds to suppose the charges could be established. I do not believe a party defendant, in such a case, should be prevented from setting up what he believed the facts would authorize him to, and that he had reasonable grounds to suppose he would be able to prove, but when he acts upon conjecture only, and alleges matters injurious to the credit and reputation of the plaintiff, upon a mere surmise that they might be true, he abuses the privilege the law confers upon him of making a defense, and, as said in *Southard* v. *Rexford, supra,* " it would be a matter of regret, indeed, if a check upon a license of this description did not exist in the power of the jury to take it into consideration in aggravation of damages." In my opinion, a defense which charges scandalous matter, and is not sustained, in order to avoid the imputation of malice, or, at least, wantonness, the law would presume, must be founded upon probable causes supported by proof, that distinctly or by necessary inference tends to establish its truth. Any less requirement would encourage an abuse of the privilege the law confers. No such proof having been submitted in this case, or facts shown from which it could legitimately be inferred, the assignment of error in regard to the charge of the court, and refusal to charge as requested, referred to herein, are not sustained.

The other grounds of error I do not regard as tenable. The petition for a rehearing should therefore be denied.