JOHN BURNETT, Plaintiff in Error, *v.* SARAH J. SIMPKINS, by her next friend, Dean Simpkins, Defendant in Error.

ERROR TO KNOX.

In assessing damages for the breach of a marriage contract, the jury may take into consideration all the injury sustained; and evidence of a seduction, the consequence of the marriage contract, may be given in aggravation of damages. On the other hand, the bad character of the plaintiff may be shown in mitigation of damages, even though the defendant was cognizant of the facts at the time of making the contract.

If the lack of virtue is relied on, to absolve the defendant from the fulfillment of his contract, his knowledge of that fact must have been acquired after entering into the agreement, and the defendant must have terminated the engagement immediately upon being apprised of the truth.

THIS was an action of assumpsit, brought to the Knox Circuit Court by defendant in error, against plaintiff in error, for a breach of marriage contract. The case was tried before THOMPSON, Judge, and a jury.

Verdict and judgment for plaintiff below.

The plaintiff introduced evidence to prove an agreement to marry.

Burnett *v.* Simpkins.

A portion of the defendant's proof went to show the general bad character, immorality, and lewdness of plaintiff, all of which was withdrawn from the consideration of the jury by the court.

The defendant's instructions, referred to in the opinion as having been refused, are as follows:

1st. If the jury believe, from the evidence, that the plaintiff, at the time of the supposed courtship, was a loose, lewd and profane woman, or a woman of bad character, they will find for the defendant, unless a positive agreement to marry has been proved.

5th. If the evidence shows that the plaintiff was a lewd woman, it is not necessary for the defendant to show that such facts did not come to his knowledge until after the supposed promise of marriage, unless a positive promise of marriage has been established.

6th. If the evidence shows that the plaintiff was a profane and lewd woman, of loose character and habits, it makes no difference whether the defendant knew that fact before or after the supposed promise of marriage, unless a positive agreement to marry has been proved.

7th. If no express promise of marriage has been proved, then it can only be inferred from circumstances; and if the jury believe, from the evidence, that the plaintiff was a lewd woman, of loose and bad habits, and accustomed to the use of profane language, it makes no difference whether the defendant knew these facts or not when he commenced courting her, and the jury must take all these things into consideration, and judge from a review of all the evidence, whether the defendant visited the plaintiff for the purpose of marrying her or for some other purpose; and if they believe he visited her for some other purpose than that of marrying her, they will find for the defendant in this action.

8th. If the defendant knew and believed the plaintiff was a lewd, lascivious and immoral woman, when he went to see her, and while he continued to visit her, the jury ought not to infer any agreement to marry her from any attentions he may have paid her under such circumstances.

14th. In estimating the damages, the jury will take into consideration the character and habits of the plaintiff, and if they believe, from the evidence, that she was addicted to lewdness and the use of profane language, or either of them, these circumstances should be considered; and no person guilty of such practices ought to recover as much damage as a pure, moral and virtuous person.

H. M. AND J. J. WEAD, for Plaintiff in Error.

TYLER & SANFORD, for Defendant in Error.

WALKER, J.  In actions for libel, slander, and the breach of marriage contract, the jury may, in assessing the damages, take into consideration the injury sustained by the plaintiff, as well to the reputation and standing in society, as the situation of the parties.  And no rule appeals more strongly to our sense of justice, or is more consonant to the principles of right, than that an injury to the reputation of the good and virtuous, should be compensated in damages.  And the proposition is too plain to be denied by any, that an injury to the character of a virtuous and good woman, is greater than to that of one who is depraved and abandoned.  To place the character of the two upon the same level, and to hold that an injury to the one is no greater wrong than to the other, is to confound all distinction between virtue and vice, the good and the depraved.  That there ever has been and will continue to be a difference, is as obvious as that virtue is preferable to vice.

No court has ever announced as a rule, in the assessment of damages, that a slander to the character of the low and depraved, is to be compensated by the same measure as if it had been inflicted upon the character of the good and upright. Such a rule can never prevail while any distinction is made in character.  When all distinction is lost, then, and not till then, will the same rule, in measuring the damages, be applied.  In assessing damages for the breach of a marriage contract, the doctrine is well settled, that the jury may take into consideration all the injury sustained, whether it be from anguish of mind, from blighted affections, or disappointed hopes, as well as injury to character, immediately resulting from the breach of the promise.  And this court has repeatedly held, that evidence of a seduction, the consequence of the marriage contract, may be given in aggravation of the damages.  It will not be insisted that the breach of promise will occasion the same anguish of mind, or produce the same injury to the reputation of a prostitute, as to a pure and virtuous woman.  Nor can a seduction result in the same injury to her character, as to that of a virtuous female.  And these are proper considerations for the jury in estimating damages.  If injury to the feelings and character of the party injured, could not be considered by the jury, there would be more plausibility in the position that evidence of bad character of the plaintiff could not be received in mitigation. But if the plaintiff may go outside of a mere pecuniary loss, and enhance the damages by showing mental suffering, loss of position and character, it would seem to follow that the defendant may show in mitigation the want of character, or one that is not above suspicion.

If the previous bad character for virtue were not known to

defendant when he entered into the engagement, and it came to his knowledge subsequently, it would absolve him from its performance, upon the grounds that it was a fraud upon the contract. But while this is true, if the want of virtue on the part of the plaintiff was known to defendant at the time, it forms no grounds of defense to the action, but it may be shown in mitigation, for the reason that its breach does not result in the same injury as if the character had been good. And we regard this as especially true, when the plaintiff seeks to enhance the damages by giving evidence of a seduction resulting from the contract. If she may thus aggravate the damages, the defendant must be permitted to show that she was, previous to the engagement, and without any act of his, wanting in virtue, in order to avoid such increased damages. If, at the time of making the contract, she was virtuous, and it was by the act of the defendant she ceased to be so, then he cannot be heard to prove the want of virtue in mitigation. But if she has previously, or during the continuance of the engagement, prostituted her person to another, and the defendant has, with a knowledge of the fact, entered into the contract, or continued it, he may show the fact in mitigation. The evidence of a want of virtue on the part of defendant in error in this case, was therefore admissible in mitigation of damages, although the plaintiff in error may have been informed of the fact at the time he entered into the contract, and it should not have been excluded from the jury. And the court erred in not giving defendant's fourteenth instruction, which announces this rule.

The contract to marry, may be proved by either positive or circumstantial evidence, precisely as any other agreement. It is, in fact, less capable of positive proof, in most cases, than any other description of agreement. And when it is proved by the one or the other mode, the parties must be held liable for its breach precisely as in that of any other contract, unless the evidence discloses facts absolving the party from its observance. If the want of virtue is relied on for that purpose, the knowledge of that fact must have been acquired after entering into the engagement, and defendant must have terminated it immediately upon being apprised of the fact, otherwise that will be considered as forming, on the part of the defendant, no objection.

The refusal of the court below to give the first, fifth, sixth, seventh and eighth of defendant's instructions, was proper. When the contract is proved, the consequences are the same, whatever the mode by which it is established. If the contract was entered into by the parties, it was that agreement, and its breach, which created the liability, and the object of the defend-

ant in entering into it, or in visiting the plaintiff, can make no difference. To have avoided liability, he should not have entered into the agreement, or, having done so, he should have performed his contract. As the cause will be remanded for further proceedings, we deem it proper to abstain from expressing any opinion of the sufficiency of the evidence to prove the contract, that being a question for the jury.

The judgment of the court below is reversed, and the cause remanded.

*Judgment reversed.*

BREESE, J., not having heard the argument in this case, gave no opinion.