Denslow v. Van Horn.

## Denslow v. Van Horn.

1. **BREACH OF MARRIAGE PROMISE: PRIOR UNCHASTITY.** That the plaintiff in an action for a breach of a marriage promise, had given birth to an illegitimate child, before the promise, which is the foundation of the action, was made, is not a bar if the fact was *known* to the defendant at the time of the making of such promise, but it may be set up in the mitigation of damages.

2. **SAME.** Evidence of the character of the plaintiff for chastity before the cause of action arose, is admissible on the trial of an action for breach of promise of marriage, for the purpose of reducing damages.

3. **SAME: DAMAGES.** The assessment of the damages sustained by reason of a breach of a marriage promise, is peculiarly within the province of the jury, and must be determined with reference to the peculiar facts and circumstances of each case.

4. **SAME: JUSTIFICATION: AGGRAVATION OF DAMAGES.** If, in an action for breach of a promise to marry, the defendant wantonly, with an intention to injure the reputation of the plaintiff, alleges that she is unchaste, without reasonable belief or expectation that he will be able to establish the same by proof, it may be considered by the jury in aggravation of damages. But it should not be so considered when the allegations are made in good faith, under circumstances which would warrant a cautious attorney in the belief that they could be established by evidence on the trial.

*Appeal from Benton District Court.*

TUESDAY, JUNE 21.

ACTION by plaintiff for breach of marriage promise. Answer: 1st. In denial; 2d. General bad character of the plaintiff for chastity, in ignorance of which the defendant's promise was made; 3d. That after the making of the promises alleged in the petition, the plaintiff, on divers occasions and with divers persons, conducted herself "in an unchaste and improper manner, and wholly unbecoming a chaste and virtuous woman, and so as to render her an unfit companion for defendant;" and 4th. Abandonment of the contract to the plaintiff. Upon these issues, the cause was tried by a jury, who rendered a verdict for the plaintiff. On the trial, the defendant excepted to certain instructions given at the plaintiff's instance. These were made the basis of a motion for a new trial, which being overruled the defendant appeals.

*S. P. Vanatta* for the appellant.

*W. C. Connell* for the appellee.

DILLON, J.—I. By the testimony, all of which is before us, it appeared that some eleven years before the trial the plaintiff had given birth to an illegitimate child. The plaintiff testified that the defendant knew this fact, and that she told him that its father's name was Reed. Upon this point the defendant's testimony is silent.

At the plaintiff's instance the Court, with reference to this subject, directed the jury as follows: "If the jury believe, from the evidence, when he promised to marry the plaintiff he knew that she was the mother of an illegitimate child, then the defendant cannot avail himself of the fact that the plaintiff had given birth to such child eleven years ago, in defense of this action."

The giving of this instruction is now assigned as error by the defendant. The view taken by the Court was clearly correct. The defendant admitted the promise to marry, in his testimony delivered on the trial. If he entered into this contract with knowledge that the plaintiff was the mother of an illegitimate child, he was not deceived; and the Court rightly charged the jury, that under these circumstances, this fact was no defense, that is, that it would not *bar* the plaintiff's action. "If a man," says ABBOTT, Ch. J., in *Irving* v. *Greenwood*, 1 C. & P., 350, "*knowingly* promise to marry such a person (a loose and immodest woman), he is bound to do so, or respond to an action for damages." *S. P. Bench* v. *Merrick*, 1 Car. & K., 463; and see, also, *Woodard* v. *Bellamy*, 2 Root Conn., 354; 2 Saund. P. & E., 347; Parsons on Cont., 550; Chitty on Cont., 538; *Morgan* v. *Yarborough*, 5 La. Ann., 316, 323 (A. D., 1850), which is the first action of the kind ever considered by the Supreme Court of that State. *Burnett* v. *Simpkins*, 24 Ill., 264.

II. At the plaintiff's request, the Court further charged: "3d. If the defendant knew of the unchaste conduct complained of when he made the promise to marry plaintiff, then the defendant cannot avail himself of such conduct as a defense in this case, either in mitigation of damages, or for any other purpose."

The "unchaste conduct," alluded to in this instruction, we suppose to mean the giving birth to the child above referred to. The defendant, as a witness, testified to unchaste conduct on the part of the plaintiff *after* the date of the marriage contract. But as this would not be embraced in the language of the instruction, we suppose the meaning to be that which is above indicated. It appeared from the plaintiff's testimony that she had lived in Benton county, over four years before the trial. It is not clear from the testimony whether she had lived in Benton county during

the eleven years preceding the trial, but we infer that she had not.

The defendant testified to a specific instance of criminal misconduct, on the part of the plaintiff, with one Dwiggins, after the date of his promise to marry. This was denied both by Dwiggins and the plaintiff. Three witnesses testified (one of whom was an assistant in a saloon) that the plaintiff's character for chastity was bad. No rebutting evidence on this subject was offered by the plaintiff. Why none was adduced we do not know. It may have been because none such could be produced, or it may have been because the plaintiff's counsel was satisfied that the jury would give no credit to the statements of the defendant's witnesses on this subject.

Such briefly stated was the attitude of the case, which it is important to bear in mind in considering the present instruction, and the one which will next be referred to.

The question now recurs on the correctness of the instruction above quoted. That instruction was in substance this: If the defendant, when he made the promise to marry the plaintiff, knew that she had eleven years before given birth to an illegitimate child, this cannot be considered by the jury in mitigation of damages.

The Court, as we have seen, had before charged, and properly, that it would constitute no *defense*. And now the inquiry is, whether it may be considered as affecting the *quantum* of damages.

The authorities treat actions for breaches of marriage promises as one of that class of actions which puts the general character of the plaintiff in issue.

"The object of this action is not merely compensation for the immediate injury sustained, but damages for loss of reputation. This must necessarily depend upon the general conduct of the party, subsequent as well as *previous* to the injury complained of, and the damages to be reco-

vered as in action for defamation, ought to be regulated by all the circumstances of the case." Per BENSON, J., RADCLIFF, KENT, and LEWIS, J. J., concurring, in *Johnson* v. *Calkins*, 1 Johns. Cas., 116; followed in *Willard* v. *Stone*, 7 Cowen, 22; and in *Palmer* v. *Andrews*, 7 Wend., 143.

The doctrine of these cases is, that the plaintiff's character, without limitation as to time, may be given in evidence by the defendant.

"Character," observed KENYON, Ch. J., in *Foulkes* v. *Selway*, 3 Esp., 236, "was the only point in issue, and that was public opinion founded on the conduct of the party; he therefore thought that what the public thought was evidence," and held testimony of reputation to be receivable. *Morgan* v. *Yarborough*, 5 Louis. Ann., 316.

The case of *Bench* v. *Merrick* (1 Car. & K., 463; 47 Eng. Com. L. 462), is strikingly similar to the case at bar. In that case it was proved that the plaintiff had had a child some ten years before the promise, and that her character afterwards, was free from any imputation whatever. The Court held, that however "severe it might be upon a woman to rake up a transaction of by-gone times," yet, if the defendant's promise to marry was made *without* knowledge of the history of the plaintiff in regard to the child, this entitled him to a verdict. It is then added: "If the defendant has not established his defense (want of knowledge of plaintiff's prior misconduct ten years before), there will then be the question of damages; and in that case, in consequence of the misfortune (calling it by no harsher name), in 1831 (the marriage promise was made in 1843), the plaintiff *cannot be said to be entitled to so large a compensation, as one on whose reputation no imputation had ever rested.*"

The observations of GIBBS, Ch. J., in *Baddely* v. *Mortlock*, 1 Holt N. P. R., 151, are to the same effect. *S. C.*, 3 Eng. C. L., 57.

In the very recent case of *Burnett* v. *Simpkins*, 24 Ill., 264 (A. D. 1850), which we discovered after the foregoing was written, it is expressly decided that in an action for the breach of a marriage promise, the bad character of the plaintiff may be shown, *in mitigation of damages*, even though the defendant was informed of the facts *at the time* he entered into the contract.

Under these authorities, having regard to the nature of the action, we are of opinion that the Court went too far in the instruction under consideration. Damages, in these cases, are peculiarly within the province and the power of the jury. They should be measured and regulated by the circumstances of each case.

If, in the case at bar, it should be shown that the plaintiff had been guilty of only one impropriety, and that at the distant period of eleven years, and that the defendant made his promise to marry her with the knowledge of this fact in her history, we do not hesitate to say that, while such fact cannot be wholly excluded from the jury in determining the amount of damages, yet they would not, and, indeed, justly should not, give to it any decisive and controlling influence in estimating the amount of the recovery. A woman who falls from virtue, no matter how artful the deception or how distressing the circumstances, is, by the severe edict of society, dishonored.

If, notwithstanding this, she maintains for a long series of years an irreproachable character, she has more than half redeemed her fault, if not her fame. Still, as a fact bearing upon, and affecting her character, it should go to the jury, who will allow to it such effect in mitigating her damages as, in the exercise of sound judgment, they deem just and proper in the particular case.

We regard such a case as the one above supposed, very different from a case where the unchaste conduct is continuing, or is recent. To allow such a woman, even where

the defendant's promise is made, with knowledge, to recover, as much as one whose character is pure, and whose reputation in society is unblemished, would be to appraise at the same price a good character and a bad one. A distinction between the two characters inheres in the judgment and the heart of man, and is, and ought to be, ineradicable. *Burnett* v. *Simpkins*, 24 Ill., 264.

III. The Court, at the plaintiff's request, gave this further charge: "4th. Where the defendant sets up bad character of the plaintiff as a defense to this action, if he fails to prove such bad character, such failure may and will be considered by the jury in aggravation of damages."

This instruction was designed to be based upon *Southard* v. *Rexford*, 6 Cow., 254. While this Court would follow that decision in a case like that in which it was made, it would not be inclined to extend it. That was tried at the circuit by Chancellor WALWORTH, when he was one of the circuit judges. In his charge to the jury (the judge having in that State the power to sum up the case and comment on the evidence), he says: "That in his defense the defendant has attempted to excuse his abandonment of the plaintiff, on the ground that she was unchaste, and had committed fornication with different individuals. But it appeared from the testimony *of his own witnesses* that her character in that respect had not been tarnished even by the breath of suspicion." And he added, that if the defendant had "spread the defense upon the record *for the purpose* of destroying her character, the jury would be justified in giving exemplary damages."

The Supreme Court approve the direction of Judge WALWORTH, and in giving the opinion of the court, SUTHERLAND, J., observes, "that where the defendant attempts to justify his breach of promise of marriage, by stating upon the record, as the cause of his desertion of the plaintiff that she had repeatedly had criminal intercourse with

Denslow v. Van Horn.

various persons, and *fails entirely* in proving it, this is a circumstance which ought to aggravate the damages. A verdict for nominal or trifling damages under such circumstances, would be fatal to the character of the plaintiff; and it would be a matter of regret, indeed, if a check upon a license of this description did not exist in the power of the jury to take it into consideration, in aggravation of damages."

Now, we take it that this was a case where the defendant set up this defense, either wantonly, for the purpose of destroying the character of the plaintiff, or where he did it in bad faith, without any *bona fide* reasonable belief or expectation that he could establish it by testimony. And in such cases we can see no objection to the rule; on the contrary, it would seem to be grounded upon good reasons.

Such a defense the law allows to be made. And to be made available, it must be spread upon the record, that is, it must be pleaded.

If the defendant sets up this defense in good faith, under circumstances which would warrant a cautious attorney in the belief and expectation that it can be established by testimony; and, if on the trial evidence is produced of a character proper to be submitted to the jury in support of this defense, we do not believe that because the jury (who are bound to decide one way or the other), either from sympathy with the plaintiff, or because the weight of evidence turns out to be in her favor, decides against the defense, that they ought in such a case to aggravate the damages. In other words, if in making this defense the defendant acts in good faith, with probable cause, and with a reasonable expectation that he can establish it, he should not be punished simply because he fails. On the other hand, if he makes this defense wantonly and in actual bad faith, or for the purpose of injuring the plaintiff's character, or if he makes it recklessly, that is, with no well

founded and reasonable expectation that he can establish it, the jury should then be directed that they may consider this as a circumstance to enhance the plaintiff's recovery.

This view accords with the analogies of the law, which in general prohibits evidence to be given of any fact, having a tendency to aggravate the damages which has occurred *after* the commencement of the suit. *Greenleaf* v. *McColley*, 14 N. H., 304. In this case it was held, that a letter written by the defendant to the plaintiff *after suit* brought, accusing her of want of chastity, was not admissible to enhance her damages.

And it also accords with the statutory rule in this state, with respect to defenses in actions for defamation. Rev., § 2929. See also *Bodwell* v. *Osgood*, 3 Pick., 379; 12 Id., 163; *Shank* v. *Case*, 1 Smith (Ind.), 87; *Byrket* v. *Monohon*, 7 Blackf., 83. Tested by these principles, the instruction above quoted and given to the jury in the case at bar was too broad. The jury were charged, that the mere failure to prove the defense of bad character, must be considered by the jury in aggravation of damages. Such is the fair meaning of the instruction. It was not qualified in the principal case, by stating that such would be the effect of an *entire failure* of proof. From *such* a failure bad faith may well be inferred. The correct direction to the jury, in cases like the present, may easily be gathered from the foregoing observations.

The judgment below is        Reversed.