## CHARLES L. LOWE, RESPONDENT, v. THE HERALD COMPANY, APPELLANT.

LIBEL—PUBLICATION—WORDS LIBELOUS.—It is unquestionably a libel for a newspaper to publish of a man that he has committed the crime of adultery, and that the current report of the vile affair makes it a crime of beastly rape.

ID.—ID.—INSTRUCTIONS.—On the trial of an action for libel charging rape, it was not error for the Court to charge the jury as to what constitutes the crime of rape.

ID.—ID.—EVIDENCE.—On the trial of an action for a libel charging rape, while the fact that the woman claimed to have been ravished, made complaint that the plaintiff had committed the outrage upon her person, is material, the particulars or details of her statement are immaterial.

ID.—INSTRUCTION AS TO CREDIBILITY OF WITNESS.—It was not error for the trial court to charge the jury that they should weigh with caution the evidence of a witness who was sworn and appeared to be a weak-minded person with little intelligence.

ID.—DAMAGES.—EXCESSIVE DAMAGES.—In action for libel a new trial will not be granted for excessive damages, such a question being within the special province of the jury.

ID.—ID.—JUSTIFICATION ENHANCING DAMAGES.—An instruction that if the jury should find for the plaintiff, they might take into consideration the defendant's allegation of the truth of the libel, and the attempt to prove its truth as enhancing the damages, unless they believed that the allegation was made in good faith, with a reasonable expectation of proving it, and that the attempt to prove it was made with a like expectation and in good faith.

ID.—ID.—EVIDENCE OF REPUTATION.—In an action for a libel charging rape, the whole general reputation of the defendant is involved, and it was error to limit the evidence of reputation by excluding evidence of honesty and integrity as a business man, and limiting it to evidence of his reputation for chastity and virtue, and as an orderly and law-abiding man.

APPEAL from a judgment and from an order denying a new trial, of the district court of the third district. The opinion states most of the material facts, except the following: The complaint, except as to the defendant's incorporation, was charged thus:

That heretofore, to-wit: On the first day of November,.

A. D. 1887, at the City and County of Salt Lake and Territory of Utah the said defendant, falsely and maliciously in the newspaper aforesaid, did publish and cause and procure to be published of and concerning the said plaintiff a certain false, scandalous, malicious and defamatory libel, and in a certain part of which said libel there was and is contained amongst other things the false, scandalous, malicious, defamatory and libelous matters following of and concerning the said plaintiff, that is to say:

" Charles L. Lowe, a well-known cattle man of Wellsville, was arrested at that place Saturday afternoon by Deputies Steele and Whetstone. The complaint was made by Thomas Grant, charging Lowe with having committed adultery with his (Grant's) sister on October 20th. The accused was brought to Logan late Saturday night and put under $1,000 bonds to appear next Thursday, at 2 o'clock p. m., when he will have a hearing before Commissioner C. C. Goodwin, William Goodwin, of Logan, and Frank Price being his sureties. The current report of the vile affair, which seems to have been a premeditated case of beastly rape, is as follows:" (Meaning and intending thereby that the plaintiff had committed a beastly rape upon a woman who was and is the sister of said Thomas Grant.)

And in another part of which said libel there was and is contained, among other things, the false, scandalous, malicious, defamatory and libelous matter following of and concerning the said plaintiff that is to say:

" At Wellsville, on October 20th, a half-witted girl named Grant was at Mrs. Lewis' millinery store, and this lady (meaning the Mrs. Lewis mentioned) sent the girl (meaning the girl named Grant) to her (Mrs. Lewis) private residence after some patchwork. She went at once, but after arriving at the house experienced some trouble in finding the articles. While here, Lowe (meaning the plaintiff) made his appearance and sent her upstairs for something, at the same time following her. He (meaning the plaintiff) told her to go to the window and see if any one was coming; she did so, and replied that no one was in sight, when he (meaning this plaintiff) is said to have began using his persuasive powers without effect; then

threats were heaped upon her, to force accession to his base wishes. Still this proved fruitless, whereupon he threw her to the floor and it is supposed satiated his fiendish and unnatural appetite."

(Meaning and intending thereby that this plaintiff used his persuasive powers to induce a half-witted girl, she not being his wife, to have sexual intercourse with him, and, failing in said attempt, that this plaintiff used force and committed the crime of rape upon the said girl.)

And in another part of which said libel there was and is contained, among other things, the false, scandalous, malicious, defamatory and libelous matter following of and concerning the said plaintiff, that is to say:

"This is the story of the girl, who kept it quiet until recently, when being pressed to go to the place again, at first remonstrated, then broke down weeping bitterly. After considerable questioning she related the above. Lowe (meaning this plaintiff) tries to appear as if it was nothing serious, and that it would come out all right, alleging that it was a libelous concoction, gotten up by some of his (meaning the plaintiff) religious enemies. This must be false, as the parties bringing the charges against him were of his own clan, and whom he once classed as his friends."

(Meaning and thereby intending that the girl mentioned had confessed that this plaintiff had indulged in criminal sexual intercourse with her, and that this plaintiff had committed the crime of rape upon said girl, and that although the plaintiff was guilty that he was brazenly endeavoring to appear innocent.)

Thereby the plaintiff suffered greatly in his reputation and character, and was greatly distressed in mind in the sum of twenty-five thousand dollars.

The Court, in ruling upon the question of reputation, limited the inquiry as to the plaintiff's character to his being a chaste and moral man, and as an orderly and law-abiding man.

*Mr. Jabez G. Sutherland, Mr. Arthur Brown* and *Mr. Le Grand Young,* for the appellant.

*Mr. Orlando W. Powers* and *Mr. Charles W. Bennett,* for the respondent.

SANDFORD, C. J.:

This is an appeal from the judgment against the defendant, and from an order denying the motion for a new trial. The action was brought against the defendant, a corporation, publishing in the city of Salt Lake a newspaper known as the "Salt Lake Daily Herald," to recover a judgment for having, as the plaintiff alleges, published false, scandalous, malicious and libelous matters concerning the plaintiff. The libel, as set out in the complaint, charged that the defendant committed adultery with a female, a half-witted girl; that from the current report of the affair it seemed to be a premeditated case of beastly rape. It is not necessary to state it in detail. The plaintiff alleged that by the publication he had suffered greatly in his reputation and character. The defendants, in their answer, denied that the publication was false or malicious, or that it was intended so to be; that the said publication was true; that it had been published in this paper as an item of news, in its usual course of business, without malice or ill will, and without any attempt to defame or injure the plaintiff, but with a full belief in the truth of the statement. The defendant contends on this appeal that certain rulings made on the trial, and to which exceptions were taken, were erroneous. These were the exclusion of the details of the complaint made by the female shortly after the occurrence, the admission of evidence tending to show the plaintiff's good character at other places than where it was attacked by the evidence offered by the defendant; to the charge to the jury, and to the verdict rendered, on the ground that it. was excessive. The fact of publication by the defendants in their newspaper of the statement relative to the plaintiff was admitted.

There is no doubt but that the published account was unquestionably a libel. It tended to blacken the reputation of the plaintiff, and expose him to public contempt. It accused him of a crime for which he could have been indicted and punished by law. *White* v. *Nicholls*, 3 How., 267, 291. No person of ordinary intelligence can read the publication complained of and resist the conclusion that it

charged a grave offense upon the plaintiff. An editor or publisher of a newspaper has a right to publish the fact that an individual has been arrested, and upon what charge; but he has no right to assume that the person is guilty, or to hold him out to the world as such. It was in fact immaterial whether a charge of adultery or of rape was made. The question for the jury was not whether it was one kind of felony or another, but whether the publication was true as was asserted by the defendant. The Court instructed the jury as to what constituted the crime of rape, and it is claimed, on appeal, that this was error, such instructions being inapplicable to this case. It was not, perhaps, exactly applicable, yet it did not, and could not, mislead the jury. In other portions of the charge the learned Judge correctly laid down the law, and we find no error of which defendant can complain in this respect. During the trial the Court received evidence tending to show that the woman had made a complaint or statement of the act that plaintiff had committed on her person, but refused to allow the defendants to go into the particulars or details of her statement. It is urged that the witness should have been allowed to give the precise language used in full; but we can see no error in thus limiting the testimony. It was sufficient to indicate the character of the alleged act, and the omission of the full particulars caused no injury to the appellants. It is urged that because the Court charged the jury that they should receive the testimony of Elizabeth Grant, a witness examined by the appellant, with caution, and scrutinize it carefully, it was error. It had appeared that she was a weak-minded girl, possessing but little intelligence. We do not find that there was any error on this point. A Judge may, if necessary, single out a particular witness, and charge the jury as to his credibility. *People* v. *Cronin*, 34 Cal., 204.

A further ground of error is urged that the damages were excessive; but the rule is well settled that in actions of this kind a new trial will not be granted for this reason. It is the special province of the jury to decide such cases under instructions from the Court. 1 Suth. Dam., 810;

*Wilson* v. *Fitch*, 41 Cal., 386. The damages are to be fixed by the jury upon a careful consideration of the charge made by the defendant, the circumstances of its publication, the extent of its circulation, and the natural consequences of such a publication. Exception is taken to that portion of the Judge's charge where he said: " And if you find for the plaintiff, you may take into consideration the fact that the defendant has alleged the charges to be true in its answer, and attempted to prove them true on this trial as enhancing damages, and as evidence of malice, unless you believe from the evidence that the allegation of the truth of such charges was made in good faith, and with a reasonable expectation of proving them, and such attempt to prove was also made with a like expectation, and in good faith." Under this instruction the jury was left, and we think properly left, to pass on the question involved in a justification. The law gives to the defendant a right in his answer to allege the truth of the matter charged as defamatory. If he exercises this right in good faith, under an honest belief in the truth of his allegation, he is not to suffer the penalty of exemplary damages; but if the jury find it was averred of record with intent to injure the plaintiff, they may rightfully consider it as an aggravation of the injury. The rule laid down in *Fero* v. *Roscoe*, 4 N. Y., 165, and *Farley* v. *Ranck*, 3 Watts & S., 555, has been somewhat modified. In *Rayner* v. *Kinney*, 14 Ohio St., 283, we find an authority which sustains the instructions of the Court in this respect. If the defendant satisfies the jury that he was not actuated by malice, but published what he did believing it to be true, that should be considered in mitigation of the damages. See, also, *Distin* v. *Rose*, 60 N. Y., 122-128.

The defendants, in their answer, deny that the plaintiff has suffered in his reputation or character, and testimony was presented by them tending to show his general character. The Court, in its ruling on this point, said: " The question as to which there seems to be some controversy is as to whether the charge that the plaintiff had committed rape on the prosecuting witness authorized the defendant to attack the general reputation of the plaintiff in all re-

spects, or whether it is to be confined to the particular side of his character, so to speak, attacked. The general rule would be that he would be confined to the particular matter involved in the charge.  *  *  *  This charge, however, of rape is a pretty broad one. It is a very serious one, and it involves something more than a mere libel, as stating that a man has committed perjury, because the rape not only attacks a man's reputation for chastity and virtue, but it attacks him as an orderly and law-abiding man.  *  *  *  I am not clear that to charge a man with rape does not involve his moral character. Certainly it involves that so far as it relates to his being a man of chastity and virtue, and so far as being an orderly and quiet man; but I should be inclined to hold that it would not be proper to go into an inquiry as to what his reputation was as to honesty and integrity in business matters, but to confine it to his general reputation as a man of chastity and virtue, and as an orderly and law-abiding man." To this ruling exception was taken by the defendants, and thereafter testimony on this point was limited to general reputation of the plaintiff in regard to chastity and good morals. The defendants urge that this ruling was erroneous. The general character of the plaintiff at the time the libel is published is deemed to be in issue, for that is the foundation of his claim for damages. Where a man of fair character has been attacked, the law will repair the damages. The defendant may show the general bad character of the plaintiff, because he relies upon its goodness before it has been calumniated. *Bodell* v. *Swan*, 3 Pick. 377; *Stone* v. *Varney*, 7 Metc. 86–90; *Paddock* v. *Salisbury*, 2 Cow. 811. It was held in the case of *Clark* v. *Brown*, 116 Mass. 504, which was an action of slander, that the defendant may introduce evidence in mitigation of damages, showing that the plaintiff's general reputation is bad, and may also show that his general reputation is bad in respect to the charges made by the defendant's slanderous words. The action is for an injury to the position and standing of the plaintiff among his fellows, and the defendant may show that the plaintiff's general reputation is already bad, with a view of showing that no serious injury can have been inflicted on

him. Page 509. In *Bowen* v. *Hall*, 20 Vt., 232, the Court decided that the defendants could prove the general bad character of the plaintiff in respect to the imputed offense, and also the general character of the plaintiff. A plaintiff's character may be beyond suspicion in respect to the imputed offense, and yet his general character in other respects may be impeached. In such a case the defendant should be allowed to show the general bad character of the plaintiff, and also the general bad character in respect to the particulars in which it has been assailed. A reputation already damaged, either in the very point in controversy or general, is not so valuable as a reputation which is unspotted. When a jury is called upon to fix, by a money judgment, the amount of injury a man's reputation has sustained by a particularly injurious act, the measure of damages must be regulated in accordance with commercial principles. We are of the opinion that the defendant should have been allowed to present evidence as to the plaintiff's general reputation or character, as well as evidence in regard to his chastity and good morals, and that it was error to restrict the evidence to showing only the plaintiff's alleged bad character in the respect of chastity, and as an orderly, law-abiding man. As there must be a new trial of this action, we do not consider it necessary to discuss the other questions raised by the appeal. The judgment should be reversed, and the cause remanded for a new trial.

JUDD, J., (*concurring.*)

In this opinion I concur. I do not think the case upon the subject of character of the plaintiff was properly submitted to the jury. The learned Judge seems to have confined the ruling to the "general character" for some particular trait when it should have been as to the general character.

HENDERSON, J., dissented.