No. 789.

## WALKER v. JOHNSON.

ASSIGNMENT OF ERRORS.—*Joint Assignment.*—*Failure of Assignment.*—Where an assignment of error includes the giving of several instructions, unless all the instructions are erroneous, the assignment must fail.

INSTRUCTIONS TO JURY.—*When Duty of Court to Indicate What Instruction will be Given.*—*Assignment of Error Unavailable.*—An assignment of error that "the court erred in giving instructions Nos. 10 and 11, as asked by the plaintiff, which instructions were handed to the court, and were not seen by the defendant or his counsel until the argument to the jury had begun," can avail nothing, in the absence of a showing by the record that the court was requested to indicate what instructions it would give, as provided by section 534, R. S. 1881.

MARRIAGE CONTRACT.—*Breach of.*—*Matters in Mitigation, in Bar.*—*How Pleaded.*—*How Proven.*—*Evidence.*—In an action for breach of a marriage contract, all matters which go to the mitigation of damages are admissible in evidence under the general denial; but all matters relied on in bar of the action must be pleaded specially.

SAME.—*Matters in Mitigation.*—*Physical and Mental Condition.*—*Evidence.*—In such an action, any condition of mind or body which renders a man less fitted to fill the position of husband, or a woman less fitted to fill the position of wife, may be given in mitigation.

SAME.—*Evidence.*—*Cumulative.*—*Admission.*—*State of Health.*—In such action, where the fact that the plaintiff is afflicted with epilepsy is admitted, and the fact of long courtship and intimate knowledge of the defendant as to plaintiff's state of health is in evidence, it was not error to exclude testimony which shows the frequency of fits, as such evidence would be merely cumulative.

EVIDENCE.—*Intent, Motive, Belief.*—*When Admissible.*—When the intent, motives, or belief of a witness become material, in a case, he may testify to them.

From the Wells Circuit Court.

*A. L. Sharpe* and *C. E. Sturgis*, for appellant.

*A. N. Martin* and *E. C. Vaughn*, for appellee.

LOTZ, J.—The appellee sued the appellant on the alleged breach of a marriage contract. The only answer was the general denial.

Walker v. Johnson.

There was a trial by jury, and a verdict for $800 in favor of appellee. A motion for a new trial was overruled, and final judgment followed. The only error assigned is the overruling of the motion for a new trial.

The first cause of the motion is that the verdict was contrary to, and not supported by, the evidence.

The following are some of the undisputed facts of this case as shown by the evidence:

In the spring of 1888, the defendant commenced waiting upon and courting the plaintiff. She was then a young woman of about the age of seventeen years. She was possessed of no property, and supported herself by doing domestic work in the families of her friends and acquaintances. She was afflicted with epilepsy, or nervous convulsions. This affliction came upon her when she was about fifteen years of age. The defendant was then a man of the age of thirty-nine years. He had been previously married, but was then divorced. He was a farmer, and owned real and personal property of the value of several thousand dollars.

During the years of 1888 and 1889, he called to see her at least once a week. In 1890 his visits became more frequent. He often accompanied her to public entertainments, made her small presents, and on one occasion gave her a gold ring. He admitted on his cross-examination that he sought to win her affections, and that he was courting her with a view to matrimony; that he told her he was much attached to her, and loved her, and that she seemed to reciprocate his affections.

Sometime after the courtship commenced, he learned of her affliction from her uncle. He spoke to her about it. She admitted it, and told him that she thought she could be cured; that the doctor told her she could be, and that she was taking medicine for that purpose. In July, 1889, when the defendant was present, she had an attack of her malady, and fell prostrate in an unconscious condition,

and remained unconscious for some time. The defendant assisted her to a bed, helped to care for her for several hours, and then took her to her own home. He continued his devotions to her after this, and often counseled with her about her ailment and what physicians she should employ; he gave her money to purchase medicine. He objected to her doing hard work for fear it would aggravate her affliction. He often talked with her about her condition, and she freely gave him all the information concerning herself, except such as modesty forbade, and referred him to her physician, to learn fully her condition. The defendant did consult a physician about her health, but not the one she directed him to see. In the summer and fall of 1890, the plaintiff had a severe and long protracted illness resulting from a fever. During this time the defendant was very attentive to, and solicitous of, her welfare. In the month of November, when convalescing, she had at least three more convulsions, of which she informed the defendant. He continued his attentions up to within a few days of the 5th of March, 1891, when he was married to another woman. The plaintiff testified, that the defendant proposed marriage to her, and that she accepted the proposal, and the day for the ceremony was fixed for October 15, 1890; that on account of her ill health it was deferred to March 15, 1891. The defendant denied any such promise, and testified that he often told her that she ought not to get married in her condition of health, and that he did not believe she could be cured of her ailment.

When there is some evidence which tends to support the verdict and judgment of the trial court on all material points, this court will not reverse the judgment on the weight of the evidence. *Nichols* v. *Pressler*, 3 Ind. App. 324; *Campbell* v. *State*, 3 Ind. 206.

We are of the opinion that the evidence fully sustains the verdict.

Walker v. Johnson.

Another cause of the motion is that the court erred in giving instructions numbered from one to eight, inclusive, as asked by the plaintiff. This is a joint assignment, and unless all of the instructions are wrong the assignment fails. *Williamson* v. *Brandenbury*, 6 Ind. App. 95; *Ohio, etc., R. W. Co.* v. *McCartney*, 121 Ind. 385.

Appellant makes no claim that every one of the instructions is bad. A cursory reading of the instructions will show that such a claim could not be made in good faith. The eighth cause of the motion is that "the court erred in giving instructions Nos. 10 and 11, as asked by the plaintiff, which instructions were handed to the court, and were not seen by the defendant or his counsel until after the argument to the jury had begun." There is nothing in the record of this case which shows that either the plaintiff or defendant requested the court to indicate what instructions it would give as provided by section 534, R. S. 1881. There was a request that the court instruct the jury in writing, and with this the court complied. It had the right to prepare instructions of its own motion, and to give those requested by counsel.

Section 533, R. S. 1881, subd. 4, requires of the parties, when they desire to have special instructions given to the jury, to reduce such instructions to writing, number and sign them, and deliver them to the court before the argument commences. The design of this is to afford the court an opportunity to examine them before giving, modifying, or refusing the same. It is not the purpose of this section to afford opposing counsel an opportunity to examine the instructions asked before the argument commences. If appellant desired to know in advance of the argument what instructions the court proposed to give to the jury, of its own motion, or on the motion of opposing counsel, he should have proceeded under section 534, *supra*.

The appellant also insists that his motion for a new trial should have been sustained because of error of the court in not requiring the appellee to answer a certain question propounded to her on cross-examination, and in excluding certain other testimony offered by him.

The testimony excluded, with one exception, seems to have all been directed to one purpose in the case, that of showing the physical condition of the plaintiff before and during the time of the courtship.   Counsel for the appellee contend, that under the general issue, the appellant has no right to show that the plaintiff was afflicted with any bodily ailment; that if he intended to rely on that fact, as a defense, he should have pleaded it specially, or, if it was concealed and a fraud was perpetrated on him, he should also have pleaded the fraud specially, and that, not having done so, he can not give evidence thereof or rely thereon, either in bar or in mitigation of damages.

Contracts to marry at some future time present some phases not common to contracts in general.   Nearly all ordinary contracts concern money and money values only, but marriage contracts concern, primarily, the association, affections, and joys of domestic life.   Property and property rights are of secondary importance.   In measuring the damages on the breach of such contracts, there is also a very marked distinction.   In the breach of an ordinary contract, the damages are confined to the actual pecuniary loss or injury sustained, but in this class of cases the pecuniary loss is only one element in the measure of damages.   The unhappiness, the sorrow, anguish and humiliation resulting from the breach, and often aggravating circumstances, such as seduction, deceit, and fraud, may be considered by the jury in assessing the amount of the recovery.   In these respects the action is analogous to an action in tort.   *Thorn* v. *Knapp*, 42 N. Y. 474; *Denslow* v. *Van Horn*, 16 Iowa, 476.

In measuring the damages, the jury should contemplate the consummation of the marriage, and consider the benefits and also the disadvantages arising from such relation. The rights and benefits flowing from the marriage should be reciprocal. Hence it follows that the age, health, physical conditions, mental infirmities, social and moral standing, and habits of each of the contracting parties, as well as their property, should be considered.

In an action of this kind there are many things that a defendant may plead in bar of a recovery, and there are many things that he may give in mitigation of the amount of recovery. The rule is, that if he relies on a matter in bar he must plead it specially, but he may give any matter that goes in mitigation under the general denial. *Mabin* v. *Webster*, 129 Ind. 430.

And he may prove any fact that tends to show that no contract was made. *Goddard* v. *Westcott*, 46 N. W. Rep. 242.

If two parties make a contract to marry in the future, knowing all the facts about each other's physical, mental, moral and social conditions, on a breach thereof the jury have the right to consider such conditions in ascertaining the amount of the recovery. Such conditions, under some circumstances, when pleaded, will bar a recovery entirely, and in all cases, whether pleaded or not, they are proper in mitigation.

Any condition of mind or body which renders a man less fitted to fill the position of a husband, or a woman less fitted to fill the position of a wife, may be given in mitigation. *Goddard* v. *Wescott*, *supra*; *Miller* v. *Rosier*, 31 Mich. 475; Bishop on Mar. and Div., section 230.

In the case at bar, the defendant had the right to show the ill health of the plaintiff in mitigation. We think it would be error to exclude evidence of this character under the general denial. But was such exclusion, under the circumstances shown by the record in this case, hurtful to the appellant? On cross-examination, after the appellee ad-

mitted her affliction, and that she had had a number of convulsions, appellant's counsel then propounded this question, "Isn't it a fact that in the month of November following this conversation (with appellant), that you had more than three convulsions, that you had a dozen?" In ruling upon such questions the trial court is given a liberal discretion, and such rulings should be made in the light of the evidence then produced.

When this question was asked, the appellee and appellant had both testified concerning appellee's ill health. We think the court, in sustaining the objection, did not abuse its discretion. *City of South Bend* v. *Hardy*, 98 Ind. 577.

The appellant produced a witness who testified that she saw the plaintiff on two occasions in the month of November, 1890, and then propounded a question by which he sought to show the extent of the bodily afflictions of the appellee during the month of November, 1890. The court sustained an objection to the question, and appellant then proposed to prove by the witness that during this time appellee, instead of having three convulsions, as testified to by herself, had had fifty convulsions.

Epilepsy has ever been regarded as one of the most formidable diseases that can afflict mankind. When of long standing and severity, ultimate recovery is extremely doubtful. The paroxysms or convulsions are but the resulting effects of a primary cause. Whether appellee had three or many convulsions, that she was afflicted with this most dreaded malady was before the jury as a conceded fact. The proposed testimony was merely cumulative.

In view of all the other evidence in the case, of the admission of the plaintiff herself, and of the long courtship and intimate knowledge of the state of her health, as testified to by the appellant, we think there was no hurtful error in excluding the proposed testimony.

There remains only one other question to be considered.

When it was made to appear, by appellant's testimony, that he continued to court the appellee after he had knowledge of her affliction, his counsel then propounded this question : "Now tell the jury what your belief was concerning her ailment, as to whether or not you believed it had been cured."

An objection was sustained to this question, and appellant then offered to prove by the witness "that at the time the plaintiff told him she had been cured of her convulsions and nervousness, he believed and thought that she, at that time, was cured." This offer was excluded.

When the intent, motives or belief of a witness become material in a case he may testify to them. *Over* v. *Schifling*, 102 Ind. 191.

Here the only defense was no contract, and mitigation. The belief of the defendant would not tend to establish either. Indeed, one of the methods by which the plaintiff sought to establish the contract was the long and continued courting and attention paid to her by the defendant. If he believed that she was cured, and for that reason continued to court her, it is a circumstance tending to show the existence of the contract. There was no error in this.

We have disposed of all the questions counsel have presented, and find no error for which the judgment should be reversed.

Judgment affirmed.

Filed February 17, 1893.


## DISSENTING OPINION.

REINHARD, C. J.—It is impossible for me to agree with the conclusion reached in this case. The general principle enunciated in the opinion, that evidence of the character rejected is proper in mitigation of damages, I believe to be sound. The appellant sought to prove by a witness

that the appellee's affliction was much greater than she admitted it to be. This was proper for two reasons:

*First.* To inform the jury of the extent of her physical infirmities as an extenuating circumstance for his failure to perform the contract.

*Second.* To contradict the appellee who, when on the stand, had denied having more than three convulsions during the month of November, while it was proposed to show by the witness that she had had as many as fifty.

To say that the exclusion of such testimony is harmless, would be invading the province of the jury, who alone are competent to judge of its weight, and the force and effect to be given it. Even if the evidence was cumulative, the appellant had the clear right to make his case as strong as he could, and it was not within the discretion of the court to say he had gone far enough. Indeed, the court did not undertake to do a thing of this kind. It placed its ruling upon the sole ground that the evidence was not competent under the pleadings. This shows that the court was not regarding itself as exercising a sound discretion in excluding testimony of this character, because enough of the same class had been already introduced.

My opinion is that the judgment should be reversed upon the ground of the improper exclusion of this testimony.

Ross, J.—I concur in the dissenting opinion of Judge Reinhard.

Filed February 17, 1893.

## On Petition for a Rehearing.

Lotz, J.—The appellant has filed a petition for a rehearing, and, with great earnestness, contends that the former opinion should be withdrawn, and that the cause should be reversed for the improper exclusion of the proffered evidence of the witness, Mrs. McCormack. It is insisted

that the trial court proceeded upon the theory that evidence of the appellee's physical condition could not be given unless fraud was pleaded as a defense. It is true that the record shows that the court, during the progress of the trial, made some remarks to this effect, in the presence of the jury, but appellant did not object or except to any statement of this kind made by the court. The court, however, upon another theory, permitted evidence of the physical condition of the appellee to go to the jury, and her physical condition was fully shown by a number of witnesses. In reviewing the evidence, we do not see how it could have been much more fully shown upon any theory. The evidence was in the case, and the jury were fully informed of her physical condition. The theory upon which it was admitted is immaterial. When it was in evidence, it was in for all purposes, and if appellant desired to have the jury to consider it in mitigation, he should have asked the court to instruct the jury to that effect. He made no request of this kind. Indeed, in his original brief, he does not contend that this evidence was proper in mitigation, but upon the theory that it had a tendency to rebut the probability that he would make a promise to marry the appellee, knowing her affliction. The terrible disease with which appellee was afflicted was admitted by her, and the proffered evidence could only have one purpose, to show a greater intensity of the disease. Epilepsy is a disease of that character which causes the greatest apprehension on the part of those so affected, and their friends. It is not so much the intensity as the dread character of the disease itself that causes alarm. Appellee freely admitted her affliction, and that she suffered intensely from it on many occasions. What more could the appellant ask on this score? If the jury failed to consider appellee's physical condition in mitigation, it may have been because the appellant did not request it to be done. The

court at no time made a ruling that the jury could not consider appellee's physical condition in mitigation of damages; nor do we think this evidence was proper as tending to impeach or contradict the appellee. When the material fact is admitted, no impeachment or contradiction is possible concerning such fact. We still adhere to our original opinion that the ruling was harmless in the light of the facts disclosed by the record.

Ross, J.—I can not concur in the opinion overruling the motion for a rehearing.

Reinhard, C. J., is of the opinion that a rehearing should be granted upon the grounds expressed in his dissenting opinion.

