## Elizaette P. Corning v. Mary Dollmeyer.

### Gen. No. 4,540.

1. SLANDER—*what competent in action of, in mitigation of damages*. In an action for slander it is competent, in mitigation of damages, to show the general bad reputation of the plaintiff prior to the utterance of the slanderous words; but particular acts of misconduct are not proper to be shown.

2. ADMISSION—*how may be denied*. It is competent for a party not only categorically to deny an admission testified to, but, likewise, to support such denial by a narration of the entire conversation in which such admission is alleged to have taken place.

3. CONCLUSION OF WITNESS—*when incompetent*. In an action for slander, a question and answer as follows are improper (the question calling for and the answer giving a conclusion of fact): "Q. Do you know why you have only had four places to nurse since that time? A. Why, she advertised me all around Freeport and Lena and all around that I was a thief."

4. PLAT—*when incompetent, when not*. A plat of the *locus in quo*, which is correct in detail, is ordinarily competent; it is, however, incompetent if it has written thereon recitals which might be considered by the jury as testimony.

Action on the case for slander. Appeal from the Circuit Court of Stephenson County; the Hon. RICHARD S. FARRAND, Judge, presiding. Heard in this court at the April term, 1905. Reversed and remanded. Opinion filed October 25, 1905.

JAMES H. STEARNS and OSCAR R. ZIPF, for appellant.

DOUGLAS PATTISON, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

This was a suit by Mrs. Dollmeyer against Mrs. Corning, for slander. The declaration set out the utterance by defendant concerning plaintiff of language imputing that plaintiff had stolen certain articles of personal property out of defendant's trunk, which charge was alleged to be false and malicious. By a bill of particulars filed under a rule entered by the court, the utterance of the defamatory words complained of was confined to two occasions; the defamatory words set out in the third and fourth counts were alleged to have been spoken to Mrs. Laura Mueller, a

daughter of plaintiff, in March, 1903, and the words set out in the first and second counts were alleged to have been spoken to Otto Kieckhaefer in July, 1903. Defendant pleaded not guilty, and also a justification. There was a jury trial, and a verdict for plaintiff for $850, and judgment thereon. Defendant appeals.

Mrs. Corning occupied a room at a boarding house in Freeport. She was very ill. Mrs. Dollmeyer was her nurse. Mrs. Corning kept the articles in question in her trunk, and the trunk was kept in her room. The nurse had the key and access to the trunk during Mrs. Corning's illness, which was so severe that at one time her life was despaired of. When she became well enough to get to her trunk, she missed therefrom certain articles, and she had a conversation with the nurse about them. The nurse claims Mrs. Corning accused her of stealing the articles. Mrs. Corning testified that she did not accuse her of stealing them, but she did tell her that she was the only person that had the key, and that she should hold her responsible for the articles, and should not finish paying her until they were returned. Mrs. Dollmeyer was angry and went away, but afterwards returned and took care of Mrs. Corning for a short time, and then left. The first of the alleged slanders occurred in this way: Mrs. Mueller, daughter of the nurse, came to try to get the pay due her mother, and talked over the difficulty with Mrs. Corning. Mrs. Mueller testifies that Mrs. Corning told her that her mother had stolen these articles. Mrs. Corning denies that she used those words, but testified that what she told her was that she should hold her mother responsible for the loss of the goods until they were found, and while paying the daughter $5 at that time, she refused to pay any more until the goods were found. The second alleged slander was in July, when Mrs. Dollmeyer sued Mrs. Corning for the balance of her wages. Kieckhaefer was the constable who served the summons. He testified for plaintiff that when he served the summons Mrs. Corning told him that Mrs. Dollmeyer had stolen these articles, or some of these

articles, from her. Mrs. Corning testified that she made no such remark to the constable, but on the contrary that the constable apologized for serving the summons upon her, and said various things about Mrs. Dollmeyer implying that Mrs. Dollmeyer was a thief. The court excluded defendant's testimony as to what the constable said. The proof showed that when Mrs. Dollmeyer returned after having once left Mrs. Corning's place, she had on a long cloak or an apron, and that she went into the closet the first thing. When the daughter visited Mrs. Corning she asked Mrs. Corning if she had looked in the closet for these articles. After she was gone Mrs. Corning looked in the closet and found the supposed stolen articles underneath certain other garments on a shelf and in a place where she testified she knew they had not been the day before. This evidence had some tendency to show that Mrs. Dollmeyer brought the articles back when she returned, and went into the closet and put them in the place where they were afterwards found. It therefore tended to support the plea of justification.

Defendant proved that plaintiff's general reputation for truth and veracity in the neighborhood where she resided was bad. This was competent to impeach her as a witness. Afterwards defendant asked a witness if he was acquainted with the general reputation of plaintiff in the neighborhood where she resided. To this an objection was sustained, and defendant excepted. The court called attention to the fact that the question was not confined to any time, and defendant's counsel replied that it meant at the time of speaking the slanderous words, as alleged. Afterwards the witness was recalled, and this question was then put for defendant: "Are you acquainted with the general reputation for moral character of the plaintiff in the neighborhood in which she resides?" Plaintiff objected, the objection was sustained, and defendant excepted. The question was not limited, as it should have been, to a time at or prior to the alleged speaking of the slanderous words; but the objection was not based on that ground. Plaintiff's counsel took the

position before the trial court that only the reputation of plaintiff for honesty and integrity was in issue. While the question was imperfect, and the ruling, therefore, was not erroneous, yet as the point will probably arise on another trial, and as counsel for each party has argued it at length it seems proper to indicate what we regard as the true rule upon the subject.

Upon an examination of the authorities outside this state we conclude the prevailing rule is that defendant may show in mitigation of damages plaintiff's general bad reputation prior to the utterance of the slanderous words. Plaintiff sues to recover damages for an injury to her reputation. She asserts her reputation was good, and that it has been injured by the words uttered by defendant. The extent of that injury must be determined by the jury. The character of a person of soiled reputation is not susceptible to the same degree of injury as that of a person whose reputation has previously been unblemished. Suppose two men are falsely accused of arson, and one of them had always theretofore borne an excellent reputation as a just, pure, honorable and worthy citizen; while the other had long been generally reputed a thief, a burglar, a receiver of stolen goods, a swindler, and immoral, and yet had never been reputed guilty of the particular crime of arson. Juries which were strangers to both men would assume each had a good reputation, and might readily award each a like sum as damages. Yet it is manifest that the injury inflicted upon the reputation of the man who had always theretofore been of high repute must greatly exceed the injury to him whose general reputation was previously unsavory and bad upon every subject but that of arson. Hence, justice requires that a defendant be permitted to show the general bad reputation of the plaintiff in mitigation of damages. If plaintiff did not wish to submit to a judicial determination of the value of her reputation, she should not have brought suit for damages to that reputation. As said in Ross v. Lapham, 14 Mass. 276: "By commencing this action the plaintiff put his general repu-

tation at issue. He must be prepared to repel by evidence any attack on his character at large." The rule above stated is sustained by the following authorities: Lamos v. Snell, 6 N. H. 413; Wolcott v. Hall, 6 Mass. 514; Ross v. Lapham, 14 Mass. 276; Bodwell v. Swan, 20 Mass. 376; Stone v. Varney, 48 Mass. 86; Leonard v. Allen, 65 Mass. 241; Clark v. Brown, 116 Mass. 504; Douglass v. Tousey, 2 Wend. 352; King v. Root, 4 Wend. 113, 139; Sayre v. Sayre, 25 N. J. Law, 235; Lincoln v. Chrisman, 10 Leigh, 338; Sawyer v. Eifert, 2 Nott & McCord, S. C. 511; Lowe v. Herald, 6 Utah, 175; Burke v. Miller, 6 Blackf. 155; Sanders v. Johnson, 6 Blackf. 50; Townshend on Slander and Libel, sec. 406; Newell on Defamation, Slander and Libel, 890; 1 Greenleaf on Evidence, sec. 55; 2 Greenleaf on Evidence, sec. 424 and note 5; and 13 Am. & Eng. Ency. of Law, 493, where many other cases are cited. Of the cases above cited, Sayre v. Sayre, in two opinions, reviews the English and American cases at length, and Sawyer v. Eifert states with great force the reasons for the rule. In other states the rule has been impliedly recognized. It has been rejected in Tennessee in Bell v. Farnsworth, 11 Humph. 608, and Lambert v. Pharis, 3 Head, 622. We have thus indicated the sources whose examination will show that this question has been much discussed, and that it is generally settled law in this country that such proof is admissible in mitigation of damages; and we have done this for the reason that counsel for plaintiff contends that what our Supreme Court has said upon the subject was not really intended. In Young v. Bennett, 4 Scam. 43, the slanderous words charged plaintiff with theft. Defendant pleaded the general issue and a justification. Defendant offered to prove that at and prior to the uttering of the words charged, plaintiff's character was bad. That proof was rejected by the trial court. The first and sixth errors assigned questioned the exclusion of evidence of plaintiff's general character. It was held the evidence was admissible, notwithstanding a plea of justification had been filed, because if the justification should fail the question as to

the amount of the damages would remain. The court then noted that there were many American decisions against its admission where a plea of justification had been filed, showing that the court thoroughly considered the whole question. In Regnier v. Cabot, 2 Gilm. 34, the slanderous words charged plaintiff with fornication. Defendant inquired as to plaintiff's general character among the majority of those the witness had heard speak of her. It was held defendant could mitigate damages by showing the general bad character of the plaintiff, but that the question did not ask for her general reputation, especially in view of a previous answer of the witness that he had only heard his brother and two sisters speak of her general character. In Sheahan v. Collins, 20 Ill. 325, the court said the defendant could mitigate the damages in slander by showing the general bad character of the plaintiff, adding that "anything which tends to show that the plaintiff sustains a general bad character is proper evidence in mitigation, because there can be less injury inflicted upon the man who had a generally bad character than on one whose general character is good." In Burnett v. Simpkins, 24 Ill. 264, the same principle was announced, though the action was not for slander or libel. The principle was stated in general terms in Freeman v. Tinsley, 50 Ill. 497, and Adams v. Smith, 58 Ill. 417. In Ransom v. McCurley, 140 Ill. 626, 634, the court said the defendant might show, in mitigation of damages, the general bad character of the plaintiff before and at the time of the alleged publication of the slanderous matter. We conclude defendant was entitled to the proof if the question had been properly framed. The court properly refused to permit proof by defendant of particular acts of misconduct by plaintiff.

Plaintiff in chief called the constable and asked him to tell his entire conversation with Mrs. Corning at the time he served the writ, and he gave that conversation so far as he was able, and he was prompted therein by other questions put by plaintiff's counsel. Defendant was asked by her counsel to state the conversation which she had with

the constable at the time he served the summons upon her, and after she had, in part at least, narrated that conversation, the court excluded all that she testified the constable said. We take it to be a general rule of law that where one party has proved his version of a conversation with the opposite party, the opposite party then may produce evidence of the same conversation, even though it differs materially from the version that was first presented. Chicago City Ry. Co. v. Bundy, 210 Ill. 39, 44. This is in harmony with the settled rule that where one party introduces a conversation, the opposite party is entitled to the whole of that conversation, so far as it bears upon the subject-matter of that suit at least. Chicago & Aurora R. R. Co. v. Thompson, 19 Ill. 578; Morris v. Jamieson, 205 Ill. 87–100. It would be very strange indeed, if the defendant in this case was entitled to call out all the conversation on cross-examination, but was forbidden to rebut that proof by showing that the slanderous words were used not by defendant but by the constable. We think the court erred in excluding that portion of defendant's testimony wherein she related what the constable said in that conversation. Her mere denial might not be believed by the jury, and yet if she were permitted to detail the whole conversation and show how and by whom the slanderous words were uttered, and in what connection, and how they were brought out, her version of the conversation might have seemed to the jury reasonable and probable.

Two counts of the declaration charge special injuries to plaintiff in her calling as a nurse, and in support thereof she testified that from March, 1903, to the time of the trial, in September, 1904, she had only four places at which to nurse. She was then asked this question: "Do you know why you have only had four places to nurse since that time?" To which she answered, "Why, she advertised me all around Freeport and Lena and all around that I was a thief." The defense moved to exclude this answer, but the motion was denied, and defendant excepted. It is obvious from the entire testimony of Mrs. Dollmeyer that she had

no personal knowledge that the defendant had ever called her a thief except in the one conversation with herself, when no one else was present. If she had learned that Mrs. Corning had advertised her all around Freeport and Lena as a thief, that was purely hearsay, and the witnesses should have been called who knew the facts. No proof was introduced to show that defendant had ever spread this report, or had ever made the charge to any one except to Mrs. Dollmeyer herself and to the daughter and the constable. All the proof there was that this charge had been spread by anyone was that it had been carried by the plaintiff herself when asking various persons whether Mrs. Corning had ever told him or her that Mrs. Dollmeyer was a thief. In our judgment this answer was very improper, and was highly prejudicial to defendant, and was greatly calculated to enlarge the damages awarded by the jury.

Defendant proved the correctness of a plat of the room occupied by Mrs. Corning and of the surroundings on that story of the boarding-house and of the location of the several objects in the room, including the bed, and the trunk where the missing articles were regularly put, and the closet where the missing articles were found. Defendant then offered the plat in evidence, and the court sustained an objection thereto. The evidence was obviously offered in support of the plea of justification, as tending to enable the jury to see that Mrs. Dollmeyer when in the closet would have been beyond the observation of Mrs. Corning upon her bed, and we see no reason why it was not competent, except that the draughtsman had undertaken to preserve upon the plat testimony outside the proper functions of a plat. Near the trunk, to which Mrs. Corning testified her nurse alone had access during her illness, was a doorway into the room of another person. The plat stated : " Door always closed and locked, opening into my room against my trunk." To have permitted this plat to go in evidence, and go to the jury room with that statement upon it would have carried there evidence in writing which was not competent to go to the jury in that form. The

court therefore did not err in refusing to admit the plat. Some other rulings upon testimony and instructions have been criticised, but we think it unnecessary to discuss them. In so far as they were at all questionable, they are not likely to occur again. For the errors above pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*